*In re* MARRIAGE OF R. MARIE HARTIAN, Petitioner-Appellee, and ROBERT M. HARTIAN, Respondent-Appellant.

First District (1st Division)   Nos. 86—3306, 87—0195 cons.

Opinion filed April 18, 1988.—Rehearing denied August 2, 1988.—Modified opinion filed August 15, 1988.

James H. Wolf, of James H. Wolf & Associates, Ltd., of Chicago, for appellant.

Roger A. Rubin, of Epton, Mullin & Druth, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Respondent, Robert M. Hartian (Robert), appeals (No. 86—3306) from the order of the circuit court of Cook County denying his amended motion either to vacate, modify, amend or supplement judgment for dissolution of marriage and to conduct further hearings (hereinafter amended motion to vacate). Petitioner, R. Marie Hartian (Marie), appeals in a separate but consolidated appeal (No. 87—0195) from the order of the circuit court dismissing her section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) petition and granting Robert's section 2—611 petition.

On appeal, Robert contends that the trial court erred in: (1) denying his amended motion to vacate; (2) ruling that Dr. Nicholas Joyce-Clarke was subject to Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220) and limiting his testimony pursuant to that rule; (3) failing to modify the judgment for dissolution with respect to child custody and visitation; (4) ordering him to pay his prior attorney an additional $5,000 in fees; and (5) granting Marie's motion *in limine* prior to the section 2—611 hearing.

Marie contends (1) that the trial court erred in: (a) dismissing her section 2—611 petition; (b) failing to dismiss Robert's section 2—611 petition as being untimely; (c) modifying retroactively the court ordered support payments pursuant to section 2—611; (d) reimbursing Robert for expenses other than attorney fees and costs under section 2—611; (e) awarding Robert an unreasonable amount of attorney fees under section 2—611; and (2) that the judgment for dissolution released Robert's right to a section 2—611 hearing.

The parties were married on November 11, 1956. They had three children; Robert and Richard, who were emancipated at the time of the entry of the judgment for dissolution, and Karen, a minor.

On July 23, 1982, Marie filed a petition for dissolution of marriage charging Robert with mental cruelty. On June 16, 1983, Robert filed a counterpetition for dissolution of marriage, also charging mental cruelty.

On September 4, 1984, Marie admitted in court that she had been working approximately 20 to 30 hours per week during part of the proceedings. She previously had filed numerous pleadings with the court indicating she was unemployed throughout all of the prior proceedings. In November 1984, a deposition was taken of Michael Fuller, Marie's employer, which also established that Marie had been working during the time she claimed she was not.

On September 28, 1984, the court ordered that permanent custody of the parties' minor child, Karen, would go to Marie, and that Dr. Robert N. Traisman, a psychologist, would begin therapy with Karen and would establish what type of visitation Robert would have with his daughter, if any.

On December 17, 1984, before Judge Peterson, the grounds for dissolution, irreconcilable differences, were proved. The following day, on December 18, 1984, counsel for both parties represented to the court that an oral settlement agreement had been reached. Both Marie and Robert testified as to the terms of the agreement. Robert objected to Marie's receiving 37% of his gross, as opposed to net, pension. The court questioned whether the agreement included Marie's obtaining 37% of Robert's gross or net pension, but then, after being assured by Marie's attorney, Ronald Ladden, that the agreement included Robert's gross pension, the court told Ladden to write up the judgment.

Sometime thereafter, the judgment for dissolution was prepared and submitted to Robert Reardon, Robert's attorney. Robert refused to sign the judgment. On February 14, 1985, Reardon sent Ladden a letter stating Robert's objections to the proposed settlement agreement.

On March 21, 1985, Marie filed a motion for entry of judgment. Reardon filed a motion to withdraw as Robert's attorney. The court stated that it did not want Reardon to withdraw until the disposition of the proposed judgment for dissolution. Reardon advised the court that he and Robert were having some problems because Robert had problems with the judgment as it was to be entered. In addition, Reardon stated that he and his client were having problems communicating. Ladden then informed the court that the judgment conformed to the prove up, that he had made every change in the judgment that Robert had wanted, and initially he told the court that both parties had signed the settlement agreement. Ladden later advised the court that Robert refused to sign the agreement, but had agreed to it orally. The court signed and entered the judgment for dissolution based on the prove up and the parties' oral settlement agreement. Once the

court signed the judgment, it allowed Reardon to withdraw as Robert's attorney and James Wolf to substitute.

On April 4, 1985, Robert filed a motion either to vacate, modify, amend or supplement judgment for dissolution of marriage. On May 10, 1985, Robert filed his amended motion to vacate. On May 15, 1985, the court entered an order allowing Robert to file the amended motion, which alleged, for the first time, that during the course of the proceedings Marie had engaged in a pattern of perjury which prejudiced Robert.

On May 23, 1985, Robert filed a summary of issues at the court's request. The summary advanced, among other things, the issue of whether Marie was to receive 37% of Robert's gross or net pension. Appended to the summary was a discovery deposition of Michael Fuller, Marie's employer. In the deposition, Fuller stated that Marie had requested that her checks be made payable to her former attorney in order to hide her income and employment.

By September 17, 1986, all matters pending in this action had been transferred to Judge Jordan. On that date, he considered the amended motion to vacate and ruled from the bench granting it. However, on October 3, 1986, when the attorneys who had fee petitions appeared before Judge Jordan, he vacated his granting of the amended motion to vacate and continued the motion. On October 15, 1986, Judge Jordan explained that he had vacated his earlier order because all parties had not been present when he ruled from the bench.

On October 8, 1986, Robert filed a further amendment to his amended motion to vacate, pleading he had diminished capacity to completely comprehend the proceedings which occurred on December 18, 1984. On the same date, the court granted, in part, Marie's motion *in limine*, which she had filed on July 7, 1986, barring the introduction of evidence of her alleged perjury which occurred prior to September 4, 1984.

The court then began the hearing on the amended motion to vacate. When Robert presented his first witness, Dr. Nicholas Joyce-Clarke, whom Robert had listed as an expert in his answer to interrogatories, the court sustained Marie's Rule 220 objection (107 Ill. 2d R. 220) and limited the doctor's testimony as to things he saw, things he did, and, as appropriate, things he was told.

After hearing all of the evidence, the court denied Robert's amended motion to vacate and approved the judgment for dissolution.

The court next heard the parties' fee petitions, beginning with Robert's. Robert called Marie as an adverse witness, but she claimed

her fifth amendment right not to testify. Thereafter, she agreed to pay the fees of Robert's two former attorneys, Dennis Forman and Edward Krantz.

The court then determined that each party was responsible for paying his or her own attorney fees, including all fees necessitated by the hearings which had just been held, and granted the parties leave to file section 2—611 petitions.

On October 14, 1986, both parties filed separate petitions for section 2—611 fees, accusing each other of perjury and false pleading. Specifically, Marie requested fees incurred in defending the amended motion to vacate. Robert requested a retroactive modification of all prior orders requiring him to pay monies to Marie.

Marie also renewed her motion *in limine* to bar testimony of her alleged perjury occurring before September 4, 1984, but the court denied it.

The parties stipulated to the hours spent by the attorneys and the amounts of fees that were stated in each other's petitions.

The court heard Robert's petition first. Robert called Marie as an adverse witness, but she refused to testify, claiming her fifth amendment right not to testify. Next, Wolf, Robert's attorney, testified as to hours he expended as a result of the alleged perjury by Marie.

Marie then moved to strike and dismiss Robert's section 2—611 petition because it was not filed within 30 days of the judgment for dissolution. The court denied the motion, holding that Robert's section 2—611 petition related back to the amended motion to vacate.

Next, Robert testified, then Reardon, and then Robert rested his case. Marie then rested without presenting any testimony or evidence. Robert filed a motion to strike and dismiss Marie's section 2—611 petition which the court granted. On Robert's petition, the court awarded him $12,500 in attorney fees and $898.55 in costs. The court further awarded Robert $14,000 for monies he had paid for "various categories, whether it be for the schooling, or the maintenance, or other expenses." Thereafter, the court denied Marie's motion to reconsider.

APPEAL No. 86—3306

Robert first contends that the trial court erroneously denied his amended motion to vacate because: (1) there was no agreement or meeting of the minds between the parties concerning (a) whether Marie would receive 37% of his gross or net pension, and (b) the medical coverage for the minor child; (2) Judge Peterson signed the judgment based on a misrepresentation of fact that both parties had

signed the agreement; (3) Robert was not bound by an unauthorized agreement by his attorney; and (4) by law, Marie had no right to his disability pension unless he agreed to pay it. We disagree.

At the prove up on the oral settlement agreement on December 18, 1984, the parties represented to the court that an oral agreement had been reached. Marie testified to the terms of the agreement, including her belief that she was to receive 37% of Robert's gross pension with the United States Navy. Robert testified next, stating that he had agreed to the oral settlement agreement freely and voluntarily. However, Robert had one exception: he thought that Marie could receive only 37% of his net pension, but he stated that he would go along with whatever the Navy determined. Judge Peterson eventually ordered Ladden to write up the judgment.

The Uniformed Services Former Spouses Protection Act (the Act) authorizes the division of military pensions in dissolution of marriage proceedings. (10 U.S.C. §1408 (1982).) The Act leaves the decision regarding allocation, if any, to the State courts. *In re Marriage of Habermehl* (1985), 135 Ill. App. 3d 105, 110, 481 N.E.2d 782.

In the case at bar, Judge Peterson knew of Robert's objection when he ordered Ladden to write up the judgment order. Judge Peterson also was advised of the objection before he signed the judgment. He had before him the letter of February 14, 1985, stating Robert's objections, the transcript of the prove up and the proposed judgment for dissolution. Judge Peterson was within his discretion in signing the judgment granting Marie 37% of Robert's gross pension over Robert's objection.

Robert argues, though, that he did not agree to Marie's receiving 37% of his gross pension, which is a requirement under the Act. After our review of the record, we find that Judge Peterson, being fully advised of Robert's objection as well as Marie's contention that Robert had agreed to her receiving 37% of Robert's gross pension, concluded, in approving the judgment which included that provision, that Robert had agreed to include the provision in the settlement agreement.

For the same reasons, we find that the provision regarding medical coverage for the minor child also was properly included in the judgment for dissolution.

In addition, Ladden initially informed Judge Peterson that Robert had signed the judgment, but later Ladden corrected that mistake. Judge Peterson reviewed the judgment; thus, he could see that Robert had not signed it. The judge also reviewed the oral prove up. After reviewing the evidence, Judge Peterson found the agreement to be fair when he entered the judgment. We find that Judge Peterson

was apprised of all of the pertinent facts when he signed the judgment.

Furthermore, we find no merit in Robert's contention that he was not bound by an unauthorized agreement by Reardon. Robert himself admitted at the prove up that he had entered into the agreement freely and voluntarily. In addition, Judge Peterson approved the judgment for dissolution, finding it to be fair and thus concluding that Robert had in fact agreed to the entire settlement.

■ Next, Robert contends that the trial court erred in (1) ruling that Dr. Joyce-Clarke was subject to Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220) and (2) excluding his testimony pursuant to that rule because he was a treating physician and not an expert.

Rule 220 provides in pertinent part:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

\*\*\* Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (107 Ill. 2d R. 220(b).)

The disposition of sanctions under this section lies within the discretion of the trial court. *Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 172, 497 N.E.2d 1022, *appeal denied* (1987), 113 Ill. 2d 573, 505 N.E.2d 352.

In the case at bar, Robert listed Dr. Joyce-Clarke, in his response to Marie's interrogatories, as an expert witness, but failed to disclose what the doctor's opinions would be. Therefore, the court was within its discretion in prohibiting the doctor from testifying to any of his opinions, but allowing him to testify as to things he saw or did, and, as appropriate, things he was told.

Robert argues, however, that Dr. Joyce-Clarke was a treating physician, not an expert; therefore, pursuant to *Diminskis v. Chicago Transit Authority* (1987), 155 Ill. App. 3d 585, 589-91, 508 N.E.2d 215, *appeal granted* (1987), 116 Ill. 2d 552, 515 N.E.2d 105, the trial court should not have limited the doctor's testimony. We disagree. In *Diminskis*, the plaintiffs failed to list a doctor as an expert in their response to the defendant's Rule 220 request, but the plaintiffs listed the doctor as a treating physician in their answer to interrogatories.

Thus, the court held that the treating physician was not subject to Rule 220.

In the instant case, Dr. Joyce-Clarke was listed as an expert in Robert's answer to interrogatories, but none of his opinions were disclosed. Consequently, under these circumstances we find *Diminskis* to be inapplicable.

In any event, Dr. Joyce-Clarke testified that in December of 1984, he only saw Robert socially, and on about December 14, 1984, he saw Robert and observed that Robert was doing all right and was not typically depressed. In addition, from our review of the proceedings on December 18, 1984, we find no indication that Robert was incompetent. Furthermore, at the time Robert disclosed the existence of Dr. Joyce-Clarke as an expert in his answers to interrogatories, Robert had not yet amended his motion to vacate in order to include that he had diminished mental capacity on December 18, 1984. That amendment was filed on the date that trial began on Robert's amended motion to vacate. Thus Marie would have been prejudiced by Dr. Joyce-Clarke's opinion testimony. The court properly limited his testimony.

■ Robert next contends that the court erred by not modifying the judgment for dissolution with respect to the provision concerning custody and visitation which stated that Dr. Traisman, the psychologist examining the parties' daughter, Karen, was solely responsible for establishing a procedure for visitation between Robert and Karen until relieved of that responsibility by further order of the court. However, Dr. Traisman resigned prior to the entry of the judgment and was deceased prior to the hearing before Judge Jordan.

We find that Judge Jordan did not err in failing to modify the judgment because on May 6, 1986, Judge Peterson appointed Dr. Barbara Stock to consult with Karen and each of the parties in order to establish a procedure to reinstate Robert's visitation, if any, with his daughter. That order was entered prior to Judge Jordan's denial of the amended motion to vacate on October 10, 1986. By October 10 there was no need for Judge Jordan to modify the judgment for dissolution because the May 6 order, in effect, relieved Dr. Traisman of his prior responsibility.

Robert's next contention is that the trial court erroneously ordered him to pay an additional $5,000 to the law firm of Ketter & Reardon because the agreement between Robert and Reardon was for a total of $5,000 in fees.

In our original opinion, filed on April 18, 1988, we concluded that Reardon was only entitled to receive an additional $2,000 pursuant to the agreement rather than $5,000 as ordered by the trial court. Fol-

lowing the filing of that opinion, Robert K. Reardon (Reardon), on behalf of the law firm of Ketter & Reardon, filed a motion to intervene and a petition for rehearing or reconsideration. The petition alleged, among other things, that the judgment specified that the $5,000 represented final rather than total fees and that Robert had agreed to that amount during the oral prove up. The petition also alleged that Robert never filed a written response or objection to Reardon's "Petition for Distribution of Funds" requesting payment of the $5,000, that the fee issue was not raised in Robert's amended motion to vacate, in the summary of issues in support of said motion or in the written argument in support of the motion and that Robert also failed to raise the issue in his motion to amend and set the case for trial. Further, the petition alleged that Robert filed no written response or objection to the October 14, 1986, order directing that the $5,000 be withdrawn from funds in an escrow held by the parties' attorneys and that the firm of Ketter & Reardon was never notified that Robert intended to raise the issue of the $5,000 fee on appeal.

On May 16, 1988, we allowed Reardon's motion to intervene and Robert was requested to respond to the motion and petition.

In response to Reardon's motion to intervene, Robert argued that it should be denied on the basis that Reardon, who withdrew as Robert's attorney on March 21, 1985, lacks standing. Robert argued that neither the Illinois Code of Civil Procedure nor the supreme court rules provide an avenue for intervention in an appeal subsequent to the rendering of the court's decision. Robert suggested that Reardon could have filed *amicus curiae* briefs pursuant to Supreme Court Rule 345 (107 Ill. 2d R. 345) and with this court's permission, but that having failed to do so, he is now foreclosed from intervening. We disagree.

First, we fail to see how Reardon could have requested this court's permission to intervene pursuant to Rule 345 when he was not served with notice of the pending appeal. Reardon withdrew as Robert's attorney on March 21, 1985. On July 10, 1985, Reardon filed a rule to show cause against Robert for failure to comply with the order requiring him to pay $5,000 in final fees. At the July 10, 1985, hearing on fees, an order was entered stating that Robert was to notify Reardon of all further proceedings in this cause. The matter of the fee petition was continued several times, numerous other hearings took place, and Robert continued to notify Reardon of those hearings at which the fee issue was to be considered.

The fact that Reardon was no longer Robert's attorney in no way relieved Robert of the court-ordered duty to notify him when the fee

issue would be before the trial court, as Robert's continuing to notify Reardon clearly recognizes. Nor was Robert relieved of his duty to notify Reardon when he raised Reardon's fees on appeal as he now contends. As the court recently stated in *In re Marriage of Gluszek* (1988), 168 Ill. App. 3d 987, 993, 523 N.E.2d 126:

> "Section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 508(c)) provides a trial court with the authority to grant attorney fees. Section 508(c) further provides that an attorney who is awarded such fees may enforce the court order in his name. (Ill. Rev. Stat. 1985, ch. 40, par. 508(c).) Moreover, an attorney who obtains fees pursuant to court order under section 508(c) is entitled to defend an appeal from the award of such fees. (107 Ill. 2d R. 301.) Therefore, the attorney must be served with a notice of appeal if his fee award is being challenged. 107 Ill. 2d. R. 303(d)."

In light of the fact that Reardon was entitled to be notified of and participate in any appeal where his fees were in issue, we believe that he now has a right to intervene.

Intervention is permitted by section 2—408 of the Code of Civil Procedure, which provides in pertinent part:

> "(a) Upon timely application anyone shall be permitted as of right to intervene in an action: *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action ***.
>
> (b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: *** (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Ill. Rev. Stat. 1987, ch. 110, pars. 2—408(a)(2), (b)(2).

Intervention statutes are remedial in nature and are to be construed liberally in order " 'to allow a person to protect an interest jeopardized by pending litigation to which he is not a party or to avoid relitigation in another suit of issues which are being litigated in a pending suit.' " (*City of Chicago v. John Hancock Mutual Life Insurance Co.* (1984), 127 Ill. App. 3d 140, 143, 468 N.E.2d 428, quoting Ill. Ann. Stat., ch. 110, par. 2—408, Joint Committee Comments, at 462 (Smith-Hurd 1983).) In *City of Chicago v. John Hancock*, the court held that intervention should be allowed as a matter of right once the court has considered issues of timeliness, inadequacy of representation and sufficiency of interest. 127 Ill. App. 3d at 144.

■ The instant petition was filed on May 9, 1988, so there is no question but that the petitioner was diligent in seeking to intervene.

In determining adequacy of representation, "[t]he most important factor *** is how the interest of the absentee compares with the interests of the present parties." (7A C. Wright & A. Miller, Federal Practice & Procedure §1909, at 524 (2d ed. 1972).) Reardon's interest did not correspond to the interests of either Robert or Marie Hartian, the only parties who participated in the appeal. Robert Hartian was the only party who presented substantial arguments on the fee question and his interest was undeniably adverse to that of Reardon, thus there is no question that Reardon's interest was inadequately represented.

When a person seeking to intervene has a unique interest, the presumption under Illinois law is that existing parties do not adequately represent such interest. (*Adams v. County of Cook* (1980), 86 Ill. App. 3d 68, 72-73, 407 N.E.2d 1018.) We find that Reardon's interest is unique and that in light of the fact that he could not reasonably have relied on an existing party for representation, he is entitled to intervene as a matter of right.

■ Having determined that Reardon has the right to intervene, we next consider whether the trial court erred in granting $5,000 to the Ketter & Reardon firm.

The judgment of dissolution of marriage entered on March 21, 1985, states in pertinent part:

"X

ATTORNEY FEES

3. Husband shall pay his attorney, Ketter and Reardon, the sum of $5,000 for and as final attorney fees and costs of this litigation forthwith."

The record reflects that Robert thereafter filed an amended motion to vacate, modify, amend or supplement the judgment for dissolution. The issue of the $5,000 fee was not raised in this motion. Nor was the issue of these fees raised in a summary of issues filed on May 23, 1985, or in a written argument filed on June 28, 1985, both in support of the aforesaid motion.

On July 10, 1985, Ketter & Reardon filed a petition for rule to show cause against Robert for payment of the $5,000 fee. Robert filed no written response or objection to this petition and also failed to raise the issue in a motion filed on July 8, 1986, seeking to amend the judgment and set the case for trial.

Following a hearing on Robert's motion to vacate, the trial court, on October 14, 1986, issued an order for withdrawal of funds from an

escrow held by the parties' attorneys for the payment of the $5,000 fee. It was at this point that Robert filed an appeal but, as noted previously, he failed to serve notice on the Ketter & Reardon firm.

The March 21, 1985, judgment specified that the $5,000 was a final rather than a total fee. In light of Reardon's motion to intervene and petition for reconsideration and after reviewing the record, we find that the trial court did not err in ordering Robert to pay $5,000 in final fees to the Ketter & Reardon firm based on the language of the judgment.

Finally, Robert contends that Judge Jordan erroneously granted Marie's motion *in limine* to exclude all testimony of perjury and false pleadings prior to September 4, 1984. Because of our disposition of appeal No. 87—0195, we need not reach this issue.

APPEAL No. 87—0195

■ Marie first contends that the trial court erred in striking her section 2—611 petition. We disagree.

At both her discovery deposition and during Robert's fee petition hearing, Marie refused to testify, invoking the fifth amendment. The court then struck her petition, thereby denying her the opportunity to testify on behalf of her own petition. In striking Marie's section 2—611 petition, the trial court relied on *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57, *appeal denied* (1979), 74 Ill. 2d 586, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 80. The plaintiffs in *Galante* brought an action to recover insurance proceeds after certain property, in which they claimed an interest, was destroyed in a fire. The plaintiffs stated that they were contract purchasers of the land. The insurance companies denied liability and raised the affirmative defense of arson. The plaintiffs also sued the trustee of the property, Steel City Bank, and the beneficial owner. 66 Ill. App. 3d at 477-78.

The defendants deposed the plaintiffs, but the plaintiffs invoked their fifth amendment privilege. The defendants then moved to dismiss the plaintiffs' suit, which the court granted with prejudice. *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 479-80, 384 N.E.2d 57, *appeal denied* (1979), 74 Ill. 2d 586, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 80.

The appellate court determined that because the plaintiffs forced the defendants into court, it would have been unjust to allow the plaintiffs to have prosecuted their case and at the same time refused to answer questions, especially since the answers may have substantially aided the defendants or established a complete defense. The

court found that the plaintiffs should not "be permitted to use the Fifth Amendment privilege as both a shield of protection and a sword of attack." *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 482, 384 N.E.2d 57, *appeal denied* (1979), 74 Ill. 2d 586, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 80.

Even though Marie invoked her fifth amendment privilege as a defendant defending Robert's petition rather than as a plaintiff prosecuting a cause of action, we find the reasoning in *Galante* applicable. Marie refused to testify concerning her own alleged false pleadings, but then intended to proceed to accuse Robert of false pleading. We find that once Marie filed her section 2—611 petition seeking relief beneficial to herself, she "became an actor, a profiteer of the judicial machinery and process" (*Nuckols v. Nuckols* (Fla. App. 1966), 189 So. 2d 832, 833), thus bringing her within the reasoning and result of *Galante*. When she refused to testify she was using the fifth amendment as a shield of protection. By striking Marie's petition, the court prevented her from then using the fifth amendment as a sword of attack. The trial court properly dismissed Marie's section 2—611 petition.

■ Marie next contends that the trial court erroneously failed to dismiss Robert's section 2—611 petition because it was filed on October 15, 1986, 18 months after the judgment for dissolution was entered on March 21, 1985. We agree.

Section 2—611 requires that a party filing a petition under this section must file it "within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) In addition, because the statute is penal, it must be strictly construed according to its terms. (*In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 608, 494 N.E.2d 536.) Hence, the 30-day time period cannot be extended, even if a court still has jurisdiction over a cause. *Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 635, 432 N.E.2d 1209. But see *In re Application of County Collector* (1978), 66 Ill. App. 3d 437, 449-50, 383 N.E.2d 1224, *appeal denied sub nom. Howell v. Edelen* (1979), 74 Ill. 2d 586.

In the case at bar, Robert's petition was not filed within 30 days of the judgment for dissolution, and because his petition was based on that judgment, it was untimely. The court's permission to file the petition did not cause the petition to be timely. The court granted the parties leave to file section 2—611 petitions immediately after it had denied Robert's amended motion to vacate. Therefore, the court's order related to that proceeding, not one which took place 18 months previously. Once the court ruled against Robert, he had no grounds for a section 2—611 petition. If the court thought that Marie had lied and

that such lies affected the judgment for dissolution, it should have granted the amended motion to vacate.

Furthermore, contrary to Robert's arguments, Marie did not waive this argument, because: (1) she preserved the argument by objecting in the trial court to Robert's petition; and (2) her petition was based on the denial of Robert's amended motion to vacate, not on the judgment for dissolution, and thus, her petition was timely.

Consequently, we find that the trial court should not have allowed Robert to file an untimely section 2—611 petition. Because of our conclusion, we need not address Marie's remaining issues.

We note, however, that we agree with Marie's contention that the trial court erroneously awarded Robert $14,000 reimbursement for expenses other than fees and costs under section 2—611.

Under section 2—611, "reasonable expenses" plus a "reasonable attorney's fee" will be awarded to a party who incurred those expenses "by reason of [an] untrue pleading" made by the other party. (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) This section was intended "to prevent abuse of the judicial process by penalizing the litigant who brings vexatious or harassing actions based on false statements or brought without legal foundation." (*In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 608, 494 N.E.2d 536. See also *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 638, 494 N.E.2d 541, *appeal denied* (1986), 112 Ill. 2d 580.) Because the statute is penal, it is strictly construed. (*In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 608, 494 N.E.2d 536.) Whether to award section 2—611 sanctions is a matter lying within the sound discretion of the trial court, and the court's decision will not be disturbed on review absent an abuse of that discretion. (*Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.* (1987), 155 Ill. App. 3d 427, 434, 508 N.E.2d 331, *appeal denied* (1987), 116 Ill. 2d 553, 515 N.E.2d 106.) However, in order to support an award under section 2—611, the trial court must make findings of fact as to which pleadings were untrue or without reasonable cause and which of the expenses incurred by the moving party were incurred by reason of those allegations. *In re Marriage of Pitulla* (1986), 141 Ill. App. 3d 956, 962-63, 491 N.E.2d 90, *appeal denied* (1986), 112 Ill. 2d 594.

In the case at bar, the $14,000 the trial court awarded Robert for schooling, maintenance and other expenses went beyond the intended application of section 2—611. Such expenses were neither attorney fees nor costs associated with Robert's defense of Marie's allegedly false pleadings. In addition, the trial judge made no findings as to which of Marie's pleadings were false and which of those false plead-

ings caused which of Robert's expenses. Therefore, the award would have been improper even if Robert's petition had been timely.

In summation, in appeal No. 86—3306 we affirm the circuit court's order denying Robert's amended motion to vacate and affirm the court's order requiring Robert to pay Reardon an additional $5,000 in fees. In appeal No. 87—0195, we affirm the circuit court's order dismissing Marie's section 2—611 petition and we reverse the award of $27,188.55 in section 2—611 sanctions, which consisted of $12,500 in attorney fees, $898.55 in costs, and $14,000 for other expenses less $210 which was offset against the final judgment, which were assessed against Marie and granted to Robert.

No. 86—3306, Affirmed.
No. 87—0195, Affirmed in part; reversed in part.

QUINLAN and MANNING, JJ., concur.