# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Potenza*, 2020 IL App (1st) 192454

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF FRANCESCO POTENZA, Petitioner-Appellee, and VANESSA WEREKO, Respondent-Appellant. |
| District & No. | First District, First Division<br>Nos. 1-19-2454, 1-19-2597 cons. |
| Filed | December 31, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-D-9029; the Hon. David E. Haracz, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, reversed in part, and remanded in part. |
| Counsel on Appeal | Vanessa Wereko, of Vernon Hills, appellant *pro se*.<br><br>Tania M. Dimitrova, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Justices Hyman and Coghlan concurred in the judgment and opinion. |

**OPINION**

¶ 1        Vanessa Wereko appeals from the final judgment entered on Francesco Potenza's petition for divorce from Wereko. Wereko contends that the trial court erred by (1) awarding fees to an attorney who acted as guardian *ad litem* for the parties' children in a different case, (2) bifurcating proceedings, (3) denying her motion for substitution of judge, (4) transferring custody of the children, (5) barring Wereko from testifying about financial matters as a sanction for discovery violations, (6) dismissing many of Wereko's motions without a hearing, and (7) allocating marital assets unfairly. We reverse the transfer of custody because Potenza did not follow statutory procedures for transfer of custody. We vacate the order awarding fees to the guardian *ad litem* who did not work on this case. In all other respects, we affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND
¶ 3        Wereko married Potenza in 2006. They had two sons: G.P., born in 2008, and J.P., born in 2010. A Swiss court entered a judgment of legal separation and an order for support in 2014. After Wereko and Potenza both moved to the Chicago area, Wereko filed a petition for divorce in Lake County, and Potenza filed a counterpetition for divorce. The Lake County court entered an order allocating parental responsibilities in 2016. The parties dismissed their Lake County petitions. Potenza filed a petition for divorce in Cook County in September 2016, and Wereko filed a counterpetition in Cook County in 2017. The Cook County court appointed Russell Reid as guardian *ad litem* for G.P. and J.P.

¶ 4                          A. Lake County Guardian *Ad Litem* Fees
¶ 5        In May 2017, Stewart Auslander filed, in the Cook County proceedings, a petition for fees he claimed as the guardian *ad litem* who represented G.P. and J.P. in proceedings on the Lake County divorce petitions. Both Wereko and Potenza moved to dismiss the petition on grounds that Auslander lacked standing because he did not act as guardian *ad litem* in the Cook County case. The circuit court denied the motions to dismiss and, on November 2, 2017, entered an order awarding Auslander the fees he sought.

¶ 6                                    B. Bifurcation
¶ 7        On May 21, 2018, the trial court heard Potenza's motion for leave to take the children on vacation. During the proceedings, Potenza's attorney asked the court, "[D]id you want to get into the financials tomorrow or did you want just to do the simple prove-up grounds and get these parties divorced? My client would definitely like to be divorced and, obviously, bifurcate the proceedings."
¶ 8        The following day, Potenza's attorney elicited his consent to bifurcation. Wereko's attorney asked her whether she understood that if the court bifurcated proceedings, the court would reserve ruling on financial issues and enter a judgment dissolving the marriage. Wereko answered that she understood and that she had no objection to so proceeding. The circuit court found that the parties agreed to bifurcation. It entered an order dated June 21, 2018, dissolving the marriage and reserving ruling on all undecided issues, including all financial issues.

¶ 9                                      C. Substitution of Judge

¶ 10        In November 2018, Wereko filed a motion for substitution of judge, alleging that Judge David Haracz showed prejudice against Wereko. The circuit court assigned the motion to Judge John Thomas Carr, who held an evidentiary hearing on the petition on November 16, 2018. Wereko appeared *pro se* at the hearing. The court heard her testimony about the events that led her to believe Judge Haracz harbored a bias against her.

¶ 11        Wereko testified:

>        "The application of sexist and ultimately racist character slurs in today's society against somebody like myself has unfortunately become commonplace, where prominent leaders use their public platform to denigrate others as less than and ascribe all types of derogatory stereotypes based on gender, race, national origin, or other without recognizing the individual and the experiences that make them who they are."

¶ 12        Wereko never testified to any specific slur Judge Haracz used. She complained that Judge Haracz made several *ex parte* rulings, but she did not explain the rulings or how the context showed bias. She testified, "On July 21st, 2018, Judge Haracz threatened to throw me into jail in open court." Wereko admitted that Judge Haracz made the threat in response to Wereko's threat to disobey the court's order to produce the passports for her children so that the children could go on a vacation out of the country with Potenza. Wereko complained that Judge Haracz treated her "as a glorified babysitter or a disillusioned babysitter, an imposter instead of a mother," without specifying what acts of the judge debased her so. Also, Wereko complained that Judge Haracz granted the motion of one of her attorneys to withdraw shortly before the May 2018 hearing and the motion of successor counsel to withdraw in August 2018. Wereko complained of the bifurcation and the judge's decision to reduce the time set aside for trial from three days to two. She testified that Judge Haracz suspended the trial and ordered the parties to mediation as a tactic to force her to accept Potenza's settlement proposal. Wereko also testified that Judge Haracz refused to rule on several of her motions.

¶ 13        In her verified motion, Wereko averred that Judge Haracz said, "If you violated the Lake County judgment, then I'm going to hold you in contempt. Understand that, because I have not appreciated your actions in this case thus far in front of me." Also, when she was in the courtroom while Judge Haracz heard a different case, Judge Haracz said, "[W]ho do you think you are?" and told security to escort her from the courtroom.

¶ 14        Potenza's counsel refuted several of the specific assertions of misconduct listed in the motion for substitution of judge. Reid, the guardian *ad litem*, testified that he never heard Judge Haracz make any sexist, racist, or otherwise inappropriate remarks. Judge Carr said:

>        "With almost no exception, if I go down every paragraph that has to do with Judge Haracz, we're talking about something you say he made a wrong decision. Wrong isn't something that I determine relative to a motion for substitution. Wrong goes to the appellate court. I deal with prejudice. I have not heard anything that I think rises to the level of prejudice that would require me to substitute Judge Haracz for another judge. So the bottom line is, your motion is denied."

¶ 15        Judge Carr entered an order dated November 16, 2018, denying the motion for substitution of judge.

¶ 16                                    D. Dismissal of Motions

¶ 17        On July 15, 2019, after the case returned to him, Judge Haracz resolved several of Wereko's pending motions by entering an order that said:

> "1. Ms. Wereko's Emergency Motion to Vacate the July 1, 2019 Contempt Order and to Expunge Respondent's Record *Instanter* is denied;
>
> 2. Ms. Wereko's Motion to Vacate and/or Reconsider the Court Order Entered May 22, 2019 on Parenting Time and Minor Children's Passports is denied;
>
> 3. Ms. Wereko's Motion to Vacate and/or Reconsider the *Ex Parte* Court Order Entered June 7, 2019 is denied;
>
> 4. Ms. Wereko's Motion to Deny Petition[ ] to Modify APR [the allocation of parental responsibilities] Filed on October 29, 2018 Pursuant to Local Court Rule 2.3 and for Sanctions is denied;
>
> * * *
>
> 8. Ms. Wereko's Petition[ ] for Rule to Show Cause and Finding for Indirect Civil Contempt for Violation of the June 22, 2017, August 2, 2017 and August 30, 2017 Orders filed 10/13/17 is stricken as moot;
>
> * * *
>
> 13. Ms. Wereko's Three Count Motion for Sanctions filed 10/10/18 is denied;
>
> ***
>
> 15. Ms. Wereko's Petition[ ] for Rule to Show Cause filed 2/5/19 is denied. The Court finds that Petitioner was not willful and contumacious in his failure to immediately comply with the turnover order;
>
> 16. Ms. Wereko's Motion to Conform Court Order to Proofs filed 7/9/18 is denied;
>
> 17. Ms. Wereko's Motion for Parenting Time for Unusual Family Events filed 7/23/18 is denied;
>
> 18. Ms. Wereko's Emergency Motion for a Preliminary Injunction to Enforce the APR by Enjoining Petitioner from Having Shanine Cruz Present During Parenting Time filed 8/24/18 is denied;
>
> 19. Ms. Wereko's Motion to Modify August 29, 2018 Order Referral to Mediate Financial Issues is stricken as [m]oot."

¶ 18        The court set nine of Wereko's other pending motions for hearing. Wereko filed a notice of appeal from the order of July 15, 2019, and the appellate court docketed the appeal as case No. 1-19-1466.

¶ 19                                    E. Transfer of Custody

¶ 20        On August 1, 2019, Potenza filed a petition for an order of protection, alleging that Wereko had prevented him from seeing his children. The trial court entered an order *ex parte* that day, transferring custody of the children to Potenza. Potenza filed a more detailed petition for an order of protection on August 13, 2019, alleging that Wereko had moved and refused to disclose her new address. The court extended the order of protection and held a hearing on the petition on August 29, 2019. Potenza testified about several specific instances in which Wereko blocked his scheduled visits with the children.

¶ 21    On September 9, 2019, the trial court further extended the order of protection and set it to remain in effect until vacated by court order. The court placed the children in Potenza's custody and allowed Wereko only "[w]eekly visitation as supervised and scheduled by the Safe Travels supervision agency," plus "3 additional Face Time or telephonic communications per week with the minor children." In a separate order, the court ruled, "Mr. Potenza shall have temporary custody of the minor children pursuant to the Illinois Domestic Violence Act." As grounds for the orders, the court found that Wereko harassed Potenza by "preventing Petitioner's parenting time." Wereko filed a notice of appeal from the orders dated September 9, 2019, and the appellate court docketed the case as No. 1-19-1904. The appellate court subsequently dismissed the appeals in both docket Nos. 1-19-1466 and 1-19-1904 because Wereko failed to serve the requisite notice on Potenza's counsel.

¶ 22    Based on the transfer of custody, the court entered an order dated September 27, 2019, relieving Potenza from the duty to pay child support.

¶ 23                          F. Discovery Rulings

¶ 24    At a hearing on November 7, 2019, Wereko challenged the court's discovery rulings. Wereko, *pro se*, said,

> "the Court said I had to supply my employer's name. There is no rule/no law that I can find or was stated in the petition that requires that ***.
>
> ***
>
> I supplied my employer information, your Honor. I will not supply my employer's name at this point in time because of harassment."

¶ 25    The court offered to enter an order precluding the use of the information for harassment, but Wereko still refused to identify her employer. The court had also ordered Wereko to produce the credit report she presented to her landlord when she applied for a new apartment. The transcript of the hearing includes the following exchange:

> "MS. WEREKO: I'm having a problem with leads to relevant information with regard to my credit report. Why [is Potenza's attorney] entitled to that, your Honor?
>
> THE COURT: It may lead to other information that may be relevant.
>
> MS. WEREKO: No. I don't agree with that."

¶ 26    The court ordered Wereko to give Potenza's attorney the exhibits Wereko intended to use at trial. This discussion followed:

> "MS. WEREKO: Why would I do that?
>
> THE COURT: I'm ordering you to. This is not trial by ambush ***.
>
> ***
>
> THE COURT: Trial books 1 through 60 that you have, just give them to her.
>
> MS. WEREKO: Absolutely in light of the fact you are planning to strike my financial motions, I will not be supplying any exhibits, and I will exclude myself from the case. ***
>
> *** I cannot reasonably proceed in this matter with the level of *** judicial abuse of discretion that has been going on for the past four years.
>
> You are entitled, your Honor, to rule as you wish. I will not be here. *** I will not participate."

¶ 27    The court entered an order dated November 8, 2019, requiring Wereko to present her trial exhibits to Potenza's attorney.

¶ 28                    G. Trial on Financial Issues

¶ 29    On December 3, 2019, the trial court heard Potenza's motion to hold Wereko in contempt for refusing to identify her employer. The court barred Wereko from testifying in the trial on financial issues as a sanction for her violation of discovery orders. Wereko demanded a continuance, asking for time to find counsel. The record shows the following discussion:

"THE COURT: If you leave, then I would have to default you on the Motions *** that he's filed.

MS. WEREKO: I am here as required, your Honor. If you're going to do something, please do not use me as an excuse. ***

***

THE COURT: So you're going to leave for today?

***

MS. WEREKO: Your Honor, I can be here, but I am not participating."

¶ 30    Later in the same hearing, the following took place:

"MS. WEREKO: May I excuse myself, your Honor?

THE COURT: Are you leaving the courtroom?

MS. WEREKO: I am asking if I can excuse myself.

THE COURT: Sure. Are you going to sit down and stay or are you just going to leave?

MS. WEREKO: No, I'm leaving the courtroom.

THE COURT: Okay. But understand I am going to proceed on the record—on the record when he presents his Motion.

MS. WEREKO: Your Honor, this is his case, so, as you said, he's a Petitioner, so you're free to, I guess, rule as your consci[ence] dictates."

¶ 31    After she left, the court said:

"[F]or the record, [Wereko is] no longer in the courtroom. So I am going to strike all of her financial Pleadings. Some of those were seeking child expenses for Mr. Potenza not paying for his portion of various extracurricular or medical expenses.

So I am going to *** deny those with prejudice because they were set for trial today."

¶ 32    Concerning the financial issues set for trial, Potenza's counsel told the court that after seven years of separation, the parties had no shared property other than Wereko's car. Potenza agreed to sign away his interest in the car. The court entered an order dated December 3, 2019, allocating to each party all property in their possession and all accounts and debts in their name.

¶ 33    Wereko appealed. She listed in her notice of appeal the orders dated November 2, 2017; June 21, 2018; November 16, 2018; July 15, 2019; September 27, 2019; November 8, 2019; and December 3, 2019. We will address the orders chronologically.

¶ 34                                    II. ANALYSIS
¶ 35                        A. Lake County Guardian *Ad Litem* Fees
¶ 36        Wereko argues that the trial court lacked jurisdiction to enter its order granting Auslander's petition for fees. Potenza does not address the issue in his brief on appeal. Auslander filed no brief on appeal. We address the issue solely based on Wereko's argument. *Brzowski v. Brzowski*, 2014 IL App (3d) 130404, ¶¶ 15-16.

¶ 37        In the trial court, Auslander invoked section 506 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/506 (West 2016)) as authority establishing the court's jurisdiction. Section 506 provides:

> "The court shall enter an order as appropriate for costs, fees, and disbursements *** when the *** guardian *ad litem* *** is appointed. Any person appointed under this Section shall file *** a detailed invoice for services rendered with a copy being sent to each party. The court shall review the invoice submitted and approve the fees, if they are reasonable and necessary." 750 ILCS 5/506(b) (West 2016).

¶ 38        Resolution of the jurisdictional argument requires interpretation of the Marriage Act, so we review the trial court's ruling *de novo*. *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530-31 (2010).

¶ 39        We find that the reasoning of *In re Marriage of Birt*, 159 Ill. App. 3d 281 (1987), applies here. In *Birt*, Paul Didzerekis represented Sarah Birt in proceedings for her divorce from Maurice Birt. After Didzerekis withdrew from the case, the parties agreed to dismiss their cross-petitions for divorce, and one filed a new divorce proceeding. In the new divorce proceeding, Didzerekis filed a petition for fees. Maurice moved to dismiss the petition, arguing that the court in the new proceeding lacked jurisdiction over Didzerekis's petition. The trial court granted the motion to dismiss. The appellate court held:

> "[A] trial court lacks jurisdiction to award attorney fees once the action has been dismissed. ***.
>
>      The attorney represented the wife in the first dissolution proceeding until November 11, 1983, when she retained other counsel. That proceeding continued on until December 20, 1984, when it was dismissed, and the present proceeding was apparently commenced the next day. The attorney's petition for fees was ultimately filed in this case, to which he was a stranger ***.
>
>      *** [T]he circuit court here lacked jurisdiction to consider the petition for attorney fees incurred in the dismissed proceeding ***." *Birt*, 159 Ill. App. 3d at 284-85.

¶ 40        Auslander here, like Didzerekis in *Birt*, is a stranger to the proceedings on the new petition for divorce. We agree with Auslander that he has a recognizable interest in the marital estate. But to assert his right to payment for his work in the Lake County case, he needed to file a petition in the Lake County proceeding or he needed to petition to intervene in the Cook County case. See *In re Marriage of Hartian*, 172 Ill. App. 3d 440, 450 (1988). The trial court here lacked jurisdiction to consider Auslander's petition for fees because Auslander never filed a petition to intervene. See *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 14. We vacate the order dated November 2, 2017, awarding to Auslander fees for his work on the Lake County case.

¶ 41                                    B. Bifurcation

¶ 42       Wereko contends that the trial court erred by bifurcating proceedings on its own motion. We review a decision to bifurcate proceedings for abuse of discretion. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 201 (1982).

¶ 43       The record shows that Potenza's oral motion initiated the discussion of bifurcation, and Wereko explicitly agreed on the record to the bifurcation. The parties' agreement justifies the court's decision to bifurcate proceedings. See 750 ILCS 5/401(b)(i) (West 2018); *In re Marriage of Mathis*, 2012 IL 113496, ¶ 32.

¶ 44                              C. Substitution of Judge

¶ 45       Wereko argues that the trial court erred when it denied her motion for substitution of judge. "The trial court's decision on a petition for substitution for cause will not be disturbed on appeal unless it is against the manifest weight of the evidence." *In re Marriage of Peradotti*, 2018 IL App (2d) 180247, ¶ 16. Wereko, in her testimony in court, did not recount the exact words Judge Haracz used that showed his prejudice. Her written motion specified two remarks: (1) "If you violated the Lake County judgment, then I'm going to hold you in contempt. Understand that, because I have not appreciated your actions in this case thus far in front of me"; and (2) "who do you think you are?" Wereko complained mostly of Judge Haracz's rulings and failures to rule on her motions.

¶ 46       *Liteky v. United States*, 510 U.S. 540, 555 (1994), established the applicable principles:

> "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [Citation.] In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required *** when no extrajudicial source is involved. *** [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphases omitted.)

¶ 47       Judge Carr found that Judge Haracz's conduct did not exceed the "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555-56. We cannot say that Judge Carr's finding of no grounds for substitution of judge is against the manifest weight of the evidence. See *In re Marriage of Carrillo*, 372 Ill. App. 3d 803, 813-14 (2007)

¶ 48       In her brief on appeal, Wereko argues primarily that Judge Carr should not have heard the motion for substitution of judge because Judge Carr's "conduct demonstrated a personal bias that was also informed on belief by his known social relationship and *ex parte* communication(s)" with Judge Haracz. No evidence in the record supports Wereko's assertion

that Judge Carr had such a relationship or engaged in improper communications with Judge Haracz. The denial of the motion for substitution of judge does not warrant reversal here.

¶ 49                                    D. Dismissal of Motions

¶ 50      Wereko argues that the trial court erred when it dismissed several of her motions without a hearing, by the order dated July 15, 2019. Her brief on appeal includes only the titles of the motions; she does not explain the basis for the motions, and she does not argue the legal merit of any of the motions. Because Wereko has not met her burden of showing prejudicial error in any of the rulings, she has not shown that we should reverse the judgment because of the July 15, 2019, order. See *The Habitat Co. v. McClure*, 301 Ill. App. 3d 425, 443 (1998) (appellant has the burden of showing prejudicial error.)

¶ 51                                    E. Transfer of Custody

¶ 52      Next, Wereko challenges the orders of protection by which the court transferred temporary custody of the children to Potenza. Potenza contends that we lack jurisdiction to review the order because Wereko filed a notice of appeal challenging the order of protection dated September 9, 2019. This court dismissed her appeal because she failed to serve the notice of appeal on Potenza's attorney. That dismissal was not based on the merits, and it does not affect our jurisdiction to hear all issues raised in the current appeal.

¶ 53      Wereko contends that the trial court transferred custody of the children without considering the interests of the children. We review the decision to transfer custody for abuse of discretion. See *In re Custody of Sussenbach*, 108 Ill. 2d 489, 499 (1985).

¶ 54      The trial court transferred custody of the children pursuant to the Illinois Domestic Violence Act (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2018)), based on its finding that Wereko harassed Potenza and the children. The Domestic Violence Act defines harassment as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2018). The Domestic Violence Act establishes a presumption that "improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child from petitioner, or making a single such threat following an actual or attempted improper removal or concealment," causes emotional distress. 750 ILCS 60/103(7)(v) (West 2018).

¶ 55      Potenza testified that Wereko prevented him from seeing his children on several scheduled visits and that she had moved and left no forwarding address, leaving him with no means of contacting his sons. The evidence supports the trial court's finding that Wereko harassed Potenza within the meaning of the Domestic Violence Act.

¶ 56      The primary purpose of the Domestic Violence Act "is to aid victims of domestic violence and to prevent further violence. [Citations.] Obtaining an order of protection is not the proper procedure for resolving child custody or visitation issues. Those issues should be resolved under the Illinois Marriage and Dissolution of Marriage Act [citation]." *Radke ex rel. Radke v. Radke*, 349 Ill. App. 3d 264, 268-69 (2004). Entry of the order of protection transferred custody

of the children without a thorough consideration of all the factors required under the Marriage Act. See 750 ILCS 5/603.10(b) (West 2018).

¶ 57 The best interest of the children is paramount, and though divorcing parents often do not realize it, the children's best interest is served when there is a close and healthy relationship with both parents. We cannot determine from the evidence in the record whether the interests of the children justify the trial court's severe restriction of Wereko's parental responsibilities. See *Radke*, 349 Ill. App. 3d 264 (misuse of Domestic Violence Act will not always require reversal of the order changing custody of children). Following *Radke*, we reverse the order of September 9, 2019, in part. We note the potential difficulties with uprooting the children once again. Therefore, we uphold the part of the trial court's order making the father the temporary custodial parent, but we order the trial court to expeditiously conduct a hearing pursuant to the Marriage Act to determine the children's best interest. Because the record appears void of evidence supporting supervised visitation, we also order the trial court to immediately review whether the requirement of supervised visitation with the mother should be modified pending final resolution of the custody issue.

¶ 58 We admonish both parents to cooperate with the trial court in fashioning a visitation remedy that allows both to have and maintain a significant and wholesome relationship with the children. We follow the decision in *Reddig v. Reddig*, 12 Ill. App. 3d 1009, 1011 (1973), where the appellate court stated, "we deem it to be in the best interests of such children that the trial court conduct a further hearing regarding their removal from [their mother's custody]. A change of circumstances has ensued, and further evidence should be adduced as to the present situation of the children as to housing, education, financial well-being, health, moral atmosphere and as to the preference of the children." We remand for further custody proceedings pursuant to the Marriage Act in accord with this order.

¶ 59                                    F. Discovery Rulings

¶ 60 On November 8, 2019, the trial court entered an order barring Wereko from testifying at the trial on financial issues and barring her financial exhibits, as a sanction for her refusal to disclose the name of her employer and her refusal to give Potenza's attorney a copy of her financial exhibits. Wereko argues that her actions do not warrant any sanctions.

¶ 61 "Supreme Court Rule 219(c) provides that where a party unreasonably refuses to comply with discovery rules or orders, the trial court may enter 'such orders as are just,' imposing sanctions on the noncomplying party [citation]." *Kubian v. Labinsky*, 178 Ill. App. 3d 191, 196 (1988). "[O]nce the trial court imposes a sanction for noncompliance, the sanctioned party has the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events." *Kubian*, 178 Ill. App. 3d at 197.

¶ 62 During court proceedings, Wereko bluntly defied the court, asserting that she had no obligation to disclose the name of her employer even after the court explained that Potenza's attorney had a right to know the name so he could verify the assertions Wereko made in her affidavit about her income. The trial court properly considered Wereko's pattern of noncompliance with past discovery orders in fashioning a sanction. See *Locasto v. City of Chicago*, 2014 IL App (1st) 113576, ¶ 35. The trial court did not abuse its discretion when it barred Wereko from testifying about financial issues and by barring her financial exhibits.

¶ 63                                    G. Trial on Financial Issues

¶ 64        Wereko levels three attacks on the judgment entered on December 3, 2019. First, she asserts that the court failed to specify which property it classed as marital and which as nonmarital; second, she contends that the court erred by striking her counterclaim and dismissing all of her remaining motions; and third, she argues that the court improperly relied on hearsay evidence about her income when it set the amount of child support. All the rulings at the December 3 hearing resulted from Wereko's decision to walk out of the hearing after the judge explicitly warned her that he would hold the trial and resolve the issues without her input if she left.

¶ 65        Wereko forfeited her objections to hearsay evidence and the classification of property by failing to raise the objections at trial. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 50. We note that the transcript of the hearing shows that the court classified all property, other than Wereko's car, as nonmarital property and awarded Wereko all of the marital property.

¶ 66        The judgment, including the dismissal of Wereko's motions, constituted an *ex parte* judgment that the court may properly enter when a party has failed to attend trial. *City of Joliet v. Szayna*, 2016 IL App (3d) 150092, ¶ 47. We find this case similar to *In re Marriage of Garde*, 118 Ill. App. 3d 303 (1983). In *Garde*, when Cletus Garde failed to appear at a hearing, the trial court entered an order that relied solely on the evidence Beverly Garde presented. *Garde*, 118 Ill. App. 3d at 306. Cletus, in a motion to vacate the order, claimed that a full trial would not burden Beverly unduly. The appellate court held that Cletus had not presented an adequate excuse for his absence and that he failed to show the property division unfair. *Garde*, 118 Ill. App. 3d at 308-09. The appellate court affirmed the trial court's decision to deny the motion to vacate the *ex parte* judgment. *Garde*, 118 Ill. App. 3d at 310.

¶ 67        Here, Wereko's lack of counsel does not excuse her conduct, as she had changed her attorneys frequently over the course of the litigation. Each of Wereko's attorneys withdrew due to differences of opinion with her. See *In re Marriage of Yakin*, 107 Ill. App. 3d 1103 (1982). Wereko has not shown that the property was divided unfairly. The trial court did not abuse its discretion or violate Wereko's right to due process by entering the *ex parte* judgment distributing the property and dismissing all Wereko's unresolved motions. See *Natale v. Enterprise Publishing Co.*, 82 Ill. App. 2d 105, 107-08 (1967); *Cascade Hotel Co. v. Orleans Real Estate Co.*, 137 N.Y.S. 1054, 1055 (App. Div. 1912) (*per curiam*) (judgment entered against party who left courtroom at the outset of trial without adequate excuse). We affirm the order of December 3, 2019.


¶ 68                                       III. CONCLUSION

¶ 69        The court's finding of no adequate grounds for substitution of judge is not against the manifest weight of the evidence. The court did not err when it granted Potenza's uncontested motion for bifurcation. Wereko has not shown that the trial court erred by barring her testimony and exhibits as a sanction for discovery violations. By voluntarily leaving the courtroom during the trial, Wereko forfeited her objections to hearsay evidence and to the court's failure to state in its written order the classification of all property as marital or non-marital. Wereko has not shown prejudicial error in the dismissal of her numerous other motions. We vacate the trial court's order awarding fees to the guardian *ad litem* who worked on a prior case involving the same parties. We reverse the order of September 9, 2019, in part. We uphold the part of the trial court's order making the father the temporary custodial parent, and the trial court shall

- 11 -

expeditiously conduct a hearing pursuant to Marriage Act concerning the best interest of the children. We affirm the trial court's order in all other respects.

¶ 70            Affirmed in part, vacated in part, reversed in part, and remanded in part.