(No. 26628.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT SCHULTZ, Plaintiff in Error.

*Opinion filed September 25, 1942—Rehearing denied Nov. 11, 1942.*

JULIUS REZNIK, (C. A. CAPLOW, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The plaintiff in error, Herbert Schultz, was adjudged guilty of direct contempt of court for his refusal to testify in a criminal case on trial in the criminal court of Cook county, wherein one Walter Appelt was the defendant. He was sentenced to 90 days in jail and sued out a writ of error to review that judgment in the Appellate Court for the First District. The Appellate Court affirmed the order of the trial judge.

Schultz, a man of 28 years of age, residing in Stewartson, Illinois, was called as a witness for the People, in the Appelt case. He had theretofore, on March 12, 1941, signed a written statement to the effect that on March 11, 1941, at about three o'clock in the morning, Appelt came to the Schultz home in Stewartson and informed him that he had just shot a man who was breaking up his home; that Schultz arranged with Appelt to meet him at the home of Schultz's parents later in the morning; that Schultz drove Appelt from his father's home at Shelbyville to see a lawyer; that the two were together from about 8:30 A. M. until noon of the same day when Appelt boarded a train for Chicago; that Schultz then drove back to his home in Stewartson.

Shortly after Schultz was called to the witness stand, he was asked by counsel for the State, "Do you know the defendant, Walter Appelt?" To that question he answered, "I refuse to testify on the ground it will incriminate myself." Thereupon counsel for the People requested the court to call Schultz as a court witness, which request the court allowed, and counsel for the State was permitted to examine the witness by the use of leading questions. When interrogated as a court witness and with some urging on the part of the court, Schultz testified that he had known Appelt all his life and that he was his cousin; that he made the statement dated March 12, 1941, signed the same, and that he made it freely and voluntarily.

The witness refused to answer questions as to when he had last seen Appelt, whether he, Schultz, had been in Chicago on March 10, whether he was in his home at Stewartson, Illinois, on March 11 at three A. M., or whether he was in Chicago on March 28, 1941. When asked whether the subject matter of People's Exhibit 2 was the truth, he refused to answer. In each case the reason given for refusal to answer was because it would incriminate the wit-

ness. All this occurred in the forenoon session and thereupon the court adjourned until two o'clock in the afternoon. When the court reconvened, the judge informed Schultz that he had examined the statement very thoroughly and that while a wide latitude should be allowed in the event there was any doubt as to whether an answer might incriminate him, the court was of the opinion there was nothing in the statement that would involve the witness in any way. He was further informed that the courts have held persons cannot hide behind the constitutional provision in question merely to protect someone else, and, therefore, the court was ruling that he, Schultz, should answer any questions pertaining to any matters contained in the statement, and that in the event he did not answer them, the court would take summary action. Asked if he now understood the statement of the court, the witness replied that he did.

The witness was then again examined about the same matters as to which he had been asked in the morning, and, because of the ruling of the court, he further testified that he did see Appelt during the early morning at his own home in Stewartson, Illinois, and that he had a conversation with Appelt. He was then asked "What was the conversation that you had with the defendant Walter Appelt at that time?" The witness replied, "I refuse to testify." The court then stated, "You will have to answer that question. I will remand you to the county jail until such time as you will answer his questions. Do you understand what I said?" To this question the witness said "I refuse." The court then said "All right. The witness stands committed to the county jail. It will in nowise incriminate you, does not tend to incriminate you in any way, shape or form, in the statement that you made." The witness was then asked, "At that time, on March 11, at 3 A. M., at your home in Stewartson, Illinois, did Walter Appelt say

to you, 'I am in plenty trouble. I just shot that son-of-a-bitch four or five times'? And at that time did you say to him, referring to the defendant, Walter Appelt, 'Did you kill him'?" The witness replied "I refuse to testify." Again he was asked, "In answer to that question did he say to you, 'I don't know whether I killed him or not, but I shot him four or five times'?" To which came the same reply; "I refuse to testify." Another question was "And your position is now that no matter what question I ask you in regard to that your answer will be the same, you refuse to testify?" Answer: "That's right." Question: "In spite of the fact that the court has warned you that you must answer?" Answer: "That is right." Thereupon the court said, "All right, the bailiff will take this man into custody and he will be committed to the county jail for ninety days. You may draw the order." A formal order of commitment finding Schultz, the plaintiff in error, guilty of direct contempt, was prepared and signed by the trial judge. It contained a complete transcript of the proceedings had before the court insofar as they affected Schultz.

It is contended by Schultz, the plaintiff in error, that he was wholly within his rights in refusing to answer questions if he believed his answers would or might tend to incriminate him. Also that he is not required to explain how or in what manner the answer might tend to incriminate him. Further, that where the answer raises a reasonable doubt as to whether it might or might not incriminate him, he, Schultz, had the right to decide. In short, he relies upon and claims privilege under the fifth amendment to the United States constitution and section 10 of article II of the constitution of Illinois, which provides that "No person shall be compelled in any criminal case to give evidence against himself."

This court has often been called upon to decide under what circumstances a witness has a right to avail himself

of the constitutional provision. Plaintiff in error relies principally upon three Illinois cases in support of his position, but they are all clearly distinguishable from the facts in this case.

In *People* v. *Spain,* 307 Ill. 283, a judgment for contempt on refusal to answer a list of questions before a grand jury was reversed by this court because it was clear from the questions propounded and the facts surrounding the case that defendant's fear of criminal prosecution was not wholly unfounded and that he was well within his rights when he refused to testify. In that case the court announced, on page 290, that "Of course, a witness cannot claim the privilege of silence for a purely fanciful or sentimental reason or for the purpose of securing from prosecution some third person who is interested in concealing the facts to which the witness could testify. Every good citizen is bound to aid in the enforcement of the law, and has no right to permit himself, under the pretext of shielding himself, to be made the tool of others who are desirous of seeking shelter behind his privilege." But also, on page 291, "The rule is firmly established that if the proposed evidence has a tendency to incriminate the witness or to establish a link in the chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense, he cannot be compelled to answer."

In *People* v. *Boyle,* 312 Ill. 586, another judgment for contempt was reversed on the ground that Boyle had been ordered to answer a series of questions consisting of two groups, and, although it would have been contempt for him to have refused to answer questions of the second group, since the questions in the first group did not show any relation to the charge of bribery being investigated by the grand jury, it was not contempt for him to refuse to

answer all of the questions. In *People* v. *Newmark*, 312 Ill. 625, a judgment of contempt was reversed for like reason.

In these and many other cases it has been said that the question cannot be left entirely to the discretion of the person called as a witness, as such an interpretation of the rule would render the prosecuting authorities in many cases helpless when some witness, without any basis whatsoever, refused to testify because of this constitutional privilege.

While trial judges should be careful to preserve all the constitutional rights of any witness, we believe the true rule was well announced in *People* v. *Boyle, supra,* when the court stated, based upon both American and English authorities, that to entitle a party, called as a witness, to the privilege of silence, it must appear from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is a reasonable ground to apprehend danger to the witness from his being compelled to answer.

In the present case, we can see no reasonable ground for the witness to apprehend danger to himself from the questions asked. The privilege must not be extended to cover imaginary danger, and must not in any event be permitted to be used solely for the purpose of protecting another from being convicted. We can find no fact nor circumstance in this record which would manifest in any way that Schultz was involved in the crime for which Appelt was being tried, nor where his testimony would constitute any link in a chain of testimony which might tend to incriminate him.

We believe the only purpose which moved plaintiff in error to defy the court and refuse to answer was his eagerness to protect his cousin from prosecution. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*