JERRY GALANTE et al., d/b/a Bump City, Plaintiffs-Appellants, v. THE STEEL CITY NATIONAL BANK OF CHICAGO, Trustee, et al., Defendants-Appellees.

First District (5th Division)    No. 77-833

Opinion filed November 3, 1978.

Joseph R. Curcio, of Chicago (Ronald J. Skaar, of counsel), for appellants.

Irving B. Ribstein, Ltd., of Chicago (Eugene Lieberman, of counsel), for appellees Steel City National Bank of Chicago and Bernard Grizaffi.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Terrini, Richard A. Buchanan, and Thomas H. Ryerson, of counsel), for appellees National Ben Franklin Insurance Company and Reserve Insurance Company.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order dismissing their complaint and entering a default judgment against them on defendants' counterclaim. On appeal they contend that the trial court erred in refusing to recognize their right to assert the Fifth Amendment privilege against self-incrimination during their pretrial depositions.

The following facts pertinent to this appeal appear in the record.

Plaintiffs brought this action to recover insurance proceeds after certain property in which they claimed an interest was destroyed by fire. In their complaint they alleged that they were contract purchasers of a certain tract of land, including the buildings and structures thereon, located at 8305 West North Avenue, Melrose Park, Illinois. They also owned or were contract purchasers of certain personal property located on the premises. Defendant Steel City National Bank of Chicago (Steel City) was the trustee of the real property and held legal title thereto while Bernard Grizaffi held the sole beneficial interest in the property. The remaining defendants were various insurance companies which had issued insurance policies in name of Steel City and the plaintiffs. These various insurance policies covered the said premises, including the buildings, improvements, furnishings and personal property for losses resulting from "fire, lightning, or other calamitous events."

The complaint further alleged that on April 30, 1975, a fire "of unknown origin" destroyed the buildings and contents located on the premises. Plaintiffs claimed both a legal and an equitable interest in and to the proceeds from the aforementioned insurance policies. Although plaintiffs claimed to have performed the necessary conditions precedent to recovery under the policies, the insurance companies refused to

acknowledge their interest in the proceeds. Furthermore, defendants Steel City and Bernard Grizaffi also claimed that plaintiffs had no interest in the proceeds. In their prayer for relief plaintiffs sought recovery under the policies from each of the defendant insurance companies.

Defendant insurance companies answered the complaint, denying any liability to the plaintiffs. In addition, defendants National Ben Franklin Insurance Company and Reserve Insurance Company in their answer also raised the affirmative defense of arson, alleging in pertinent part that:

> "[T]his lawsuit is an attempt on the part of Plaintiffs to cheat and defraud these Defendants since * * * the Plaintiffs or their duly authorized agents, servants or employees, did set fire to or cause to be set fire to, burned or caused to be burned, the property described * * *."

Plaintiffs filed a reply denying the affirmative defense. Defendants Steel City and Grizaffi brought a counterclaim against the plaintiffs and the insurance companies. In their counterclaim they alleged that on August 16, 1974, Steel City had entered into articles of agreement for trustee's deed with the plaintiffs. Plaintiffs agreed to purchase the real estate described in the complaint for a total purchase price of $200,000 with $40,000 down payment and the balance payable in monthly installments of $1,720 plus interest at the rate of 10% per annum on the unpaid balance. They also agreed to pay the annual taxes on the real estate and the monthly insurance premiums. Steel City and Grizaffi alleged that commencing October 1, 1974, plaintiffs failed to make the monthly payments as agreed. As a result of this default in payments, Steel City and Grizaffi claimed that plaintiffs owed them a total of $203,099.45, including the unpaid balance of the purchase price, interest, real estate taxes, insurance premiums, attorney's fees and late charges. In their counterclaim they sought an order compelling defendant insurance companies to pay the insurance proceeds from the fire loss to Steel City and a declaratory judgment as to the rights of the parties in and to the real estate described in the complaint.

Plaintiffs answered the counterclaim, denying that they had failed to make all of the monthly contract payments to Steel City and that they had failed to pay the insurance premiums and real estate taxes. In their answer to the counterclaim plaintiffs also requested that the court dismiss the counterclaim.

Subsequently, on July 14, 1976, plaintiffs appeared for their discovery depositions pursuant to notice by the defendants. The deposition of Galante proceeded first. After being duly sworn under oath and stating his name, Galante invoked the Fifth Amendment privilege against self-incrimination to each of numerous questions propounded by the

respective defendants.* To each such question Galante replied, "I decline to answer that question on the grounds that any answer I give may tend to incriminate me."

Plaintiff Messina, after being duly sworn under oath, was next deposed and also refused to give any answers other than his name. After he refused to give his address and state whether he had heard the questions asked of Galante, his attorney stipulated that Messina was present during the Galante deposition and would invoke the Fifth Amendment privilege against self-incrimination if asked the same or similar questions as were propounded to Galante.

Thereafter, on August 13, 1976, defendants presented motions to dismiss plaintiffs' complaint or for other sanctions pursuant to Illinois Supreme Court Rule 219 (Ill. Rev. Stat. 1975, ch. 110A, par. 219) as a result of plaintiffs' refusal to answer questions at their depositions. On March 10, 1977, the trial court, after reviewing the briefs submitted by the interested parties and hearing arguments of counsel, ordered in pertinent part that:

> "[A]ll matters pending be and hereby are continued for further hearing to Tuesday, April 4, 1977, at 3:00 P.M., at which time plaintiffs or their counsel will indicate whether plaintiffs, separately or together, will respond to proper questions at a deposition * * *.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that should and in the event plaintiffs, separately or together, indicate an intention not to answer questions propounded, then and in that event the Court will on April 4, 1977, strike and dismiss the cause of action of plaintiffs, Galante and Messina, and to enter default judgment against plaintiffs in their capacity as counter-defendants."

At the hearing on April 4, 1977, the trial court asked their counsel whether the plaintiffs were "prepared to answer proper questions at a deposition, proper being referred to as relevant and material to this case." Plaintiff's counsel replied that "my clients persist in their Fifth Amendment privilege" and that "in the absence of prosecutory immunity they are not prepared to waive their presence." The following exchange next occurred at the hearing:

> "PLAINTIFFS' COUNSEL: Your Honor, so that I may under-stand your question, appear and answer proper questions. I don't know what these proper questions are.
> THE COURT: Questions that are relevant or material to the issues in the case.
> They do not have to answer questions about the prospect of the

---

* A transcription of the examination of Galante, prepared by a certified shorthand reporter who was present at the depositions, consists of approximately 50 pages.

Chicago Cubs this year.

We understand what proper questions at a deposition are. We discuss that all the time as lawyers.

PLAINTIFFS' COUNSEL: Your Honor, again I repeat what I have said. My clients are not prepared to waive their Fifth Amendment rights and privileges.

They feel there is a real threat of criminal prosecution.

They cannot appear before this Court and answer these questions, nor can they appear at a discovery deposition and voluntarily participate in that where there is a threat of criminal prosecution.

THE COURT: The Court finds that their refusal to answer the questions that comprised more than 50, 60 pages in the case of Galante at his deposition is without any * * * authority * * *. The Court finds that they have not so answered.

We then go onto the next step. We will at this time strike and dismiss the cause of action and enter default judgment against the Plaintiffs in their capacity as counterdefendants."

Following this hearing the trial court issued a finding that the plaintiffs would continue in their refusal to answer "proper oral interrogatories propounded to them at a deposition." The trial court therefore on April 5, 1977, struck all pleadings filed by the plaintiffs, dismissed their complaint with prejudice and entered a default judgment against them on the counterclaim of Steel City and Bernard Grizaffi.

Plaintiffs appeal from the entry of this order.

OPINION

Plaintiffs first contend that the trial court erred in dismissing their complaint after they refused to answer questions at their depositions. They argue that the dismissal placed an unconstitutional burden upon their exercise of the Fifth Amendment privilege against self-incrimination.

The question of whether the plaintiffs, by commencing the action and submitting themselves to the jurisdiction of the court can be compelled either to waive their privilege against self-incrimination found in the Fifth Amendment of the United States Constitution and respond to discovery procedures, or have their complaint dismissed, is one of the first impression in Illinois. Our research does indicate, however, that a number of other jurisdictions, both State and Federal, have dealt with this precise question. These jurisdictions have overwhelmingly rejected the contention that a plaintiff in a civil action may invoke the Fifth Amendment privilege against self-incrimination while still maintaining the lawsuit.

In *Levine v. Bornstein* (1958), 13 Misc. 2d 161, 174 N.Y.S. 2d 574, *aff'd* (1959), 7 App. Div.2d 995, 183 N.Y.S.2d 868, *aff'd* (1959), 6 N.Y. 2d

892, 190 N.Y.S.2d 702, 160 N.E.2d 921, the defendant alleged that the plaintiff, an attorney, had solicited the action to collect a judgment. The plaintiff attempted to invoke the Fifth Amendment privilege in response to the allegation during examination prior to trial and cited decisions where such privilege had been properly asserted. The court rejected plaintiff's contention, stating:

> "However, an examination of the above and other reported cases on the subject reveals that the privilege was always claimed by a non-party witness or by a defendant in court involuntarily, seeking only to defend. It does not follow that the protection of the privilege should be expanded to shield a plaintiff who with one hand seeks affirmative relief in court and with the other refuses to answer otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action. To uphold this inconsistent position would enable the plaintiff to use the privilege as an instrument of attack." 13 Misc. 2d 161, 164, 174 N.Y.S.2d 574, 577.

The *Levine* case was cited with approval in *Laverne v. Incorporated Village of Laurel Hollow* (1966), 18 N.Y.2d 635, 272 N.Y.S.2d 780, 219 N.E.2d 294, where the Court of Appeals of New York stated:

> "The privilege against selfincrimination was intended to be used solely as a shield, and thus a plaintiff cannot use it as a sword to harass a defendant and to effectively thwart any attempt by defendant at a pretrial discovery proceeding to obtain information relevant to the cause of action alleged and possible defenses thereto." 18 N.Y.2d 635, 638, 272 N.Y.S.2d 780, 782, 219 N.E.2d 294, 295.

Other sister States have also adopted the rule that a plaintiff may not maintain a civil action while simultaneously invoking the Fifth Amendment in refusing to comply with requests for discovery. See *Christenson v. Christenson* (1968), 281 Minn. 507, 162 N.W.2d 194; *Franklin v. Franklin* (1955), 365 Mo. 442, 283 S.W.2d 483; *Annest v. Annest* (1956), 49 Wash. 2d 62, 298 P.2d 483; *Stockham v. Stockham* (Fla. 1964), 168 So.2d 320.

The Federal courts which have considered this issue have also rejected a plaintiff's right to maintain a civil action while also asserting the Fifth Amendment privilege in response to a defendant's requests for discovery. (See *Lyons v. Johnson* (9th Cir. 1969), 415 F.2d 540, *cert. denied* (1970), 397 U.S. 1027, 25 L. Ed. 2d 538, 90 S. Ct. 1273; *Brown v. Ames* (D. Minn. 1972), 346 F. Supp. 1176; *Kisting v. Westchester Fire Insurance Co.* (W.D. Wisc. 1968), 290 F. Supp. 141, *aff'd* (7th Cir. 1969), 416 F.2d 967; *Independent Productions Corp. v. Loew's Inc.* (S.D.N.Y. 1958), 22 F.R.D. 266.) *Kisting*, which presented a situation similar to the case at bar, involved a civil action on a fire insurance policy wherein the

insurer alleged arson by the insured as an affirmative defense. The plaintiff there, asserting the Fifth Amendment privilege, refused to answer certain questions propounded to him by defendant's counsel at a pre-trial examination. The court, in answer to plaintiff's assertion of the privilege, stated:

> "Plaintiffs * * * seek to utilize the privilege not only as shield, but also as a sword. This they cannot do. A plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion. [Citations.]" 290 F. Supp. 141, 149.

■■ We find the reasoning of the above cases to be persuasive and are in agreement with the opinions expressed therein. Although it is true that plaintiffs cannot be forced to involuntarily incriminate themselves, we do not believe they should be permitted to use the Fifth Amendment privilege as both a shield of protection and a sword of attack. Plaintiffs have forced defendants into court. It would be unjust to allow them to prosecute their cause of action and, at the same time, refuse to answer questions, the answers to which may substantially aid defendants or even establish a complete defense. See *Independent Productions Corp. v. Loew's, Inc.* (1958), 22 F.R.D. 266.

■■ Plaintiffs argue, however, that the trial court abused its discretion in not first ordering them to answer questions before dismissing the complaint. Supreme Court Rule 219 (Ill. Rev. Stat. 1975, ch. 110A, par. 219) does not, however, require such a prerequisite. (*Savitch v. Allman* (1975), 25 Ill. App. 3d 864, 323 N.E.2d 435.) While it is true that "[t]he dismissal of a cause with prejudice is a drastic sanction and should be employed only as a last resort" (*Department of Transportation v. Zabel* (1975), 29 Ill. App. 3d 407, 410, 330 N.E.2d 878, 880), we believe such action was warranted here. At the hearing on the motion to dismiss, plaintiffs' attorney repeatedly stated that, in the absence of prosecutory immunity, plaintiffs would continue to invoke the Fifth Amendment privilege at their depositions. We believe the record indicates that an order compelling plaintiffs to abandon their Fifth Amendment claim would have been a futile gesture. Accordingly, we cannot say that the trial court abused its discretion in dismissing the complaint.

Plaintiffs also contend that the trial court erred in ordering a default judgment against them on the counterclaim for their invocation of the privilege against self-incrimination at their depositions. We believe plaintiffs' assertion of the privilege as counterdefendants must be distinguished from their assertion as plaintiffs. As counterdefendants, the plaintiffs stood as involuntary defendants rather than as voluntary, active litigants. (See Ill. Rev. Stat. 1975, ch. 110, par. 21(4).) The procedure to be followed where a defendant in a civil action asserts the Fifth Amendment

privilege against self-incrimination during a deposition was articulated by this court in *People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 358 N.E.2d 1160. That case involved the right of a defendant in a paternity action, a civil proceeding, to refuse to answer deposition questions based upon the privilege against self-incrimination. The trial court allowed the defendant to invoke the privilege and refused to order him to answer any deposition questions. On appeal, we recognized the existence of defendant's privilege but held that the trial court erred in its method of recognizing the privilege, stating:

> "[T]he mere assertion of constitutional privilege does not automatically insulate a party from the usual duty to comply with discovery. The deponent must have a reasonable ground to fear self-incrimination if he is compelled to answer (*People v. Schultz* (1942), 380 Ill. 539, 544, 44 N.E.2d 601); fanciful or imaginary dangers will not suffice. (*In re Holland* (1941), 377 Ill. 346, 355, 36 N.E.2d 543.) In the case at bar, therefore, the trial court should have scrutinized each disputed question and clearly ruled on the reasonableness of defendant's refusal to answer." 44 Ill. App. 3d 783, 787, 358 N.E.2d 1160, 1163.

■■ As counterdefendants, the plaintiffs here clearly retained their Fifth Amendment privilege against self-incrimination at the depositions. The trial court, however, did not conduct a review of each question in order to determine whether the answer could possibly have tended to incriminate plaintiffs. We believe plaintiffs, in their capacity as counterdefendants, were entitled to such a question by question determination in order to adequately protect their rights under the Fifth Amendment. Had they persisted in refusing to answer questions to which the Fifth Amendment was found inapplicable, the trial court could have properly ordered a default judgment against them on the counterclaim pursuant to Supreme Court Rule 219(c)(v) (Ill. Rev. Stat. 1975, ch. 110A, par. 219(c)(v)). (See *People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 358 N.E.2d 1160.) Accordingly, the counterclaim must be remanded to the trial court for a proper determination as to the applicability of the Fifth Amendment privilege against self-incrimination to each deposition question asked of plaintiffs.

For the foregoing reasons the portion of the judgment of the circuit court dismissing the complaint is affirmed. The portion of the judgment ordering a default against plaintiffs on the counterclaim is reversed and remanded for further proceedings not inconsistent with the opinions expressed herein.

Affirmed in part; reversed in part; remanded with directions.

SULLIVAN, P. J., and WILSON, J., concur.