LOUIS ACERRA, Plaintiff-Appellant, v. BARRY GERSHINZON, as the Adm'r for the Estate of David Wolfson, Defendant-Appellee.

First District (4th Division) No. 1—88—3665

Opinion filed June 14, 1990.

Edmund P. Wanderling, Joseph N. DiNatale, and Anthony M. Montemurro, all of DiNatale & Montemurro, of River Forest, for appellant.

Richard G. Schultz and Peter A. Silverman, both of Foran, Wiss & Schultz, of Chicago, for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Louis Acerra, appeals from an order granting the motion of defendant, Barry Gershinzon, the administrator of the estate of David Wolfson, for the imposition of sanctions against plaintiff and his attorneys in an action to enforce an oral contract. Plaintiff contends that the imposition of sanctions under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) was an abuse of the trial court's discretion.

On August 25, 1987, plaintiff filed a three-count verified complaint seeking a declaratory judgment, specific performance, injunc-

tive relief and an accounting in connection with an alleged oral contract for an interest in a parcel of real property. Plaintiff alleged that on December 31, 1986, pursuant to an oral agreement between them, Wolfson purchased a vacant commercial building in Chicago for $150,000 of which he (plaintiff) contributed $20,000. Under the agreement, plaintiff was to renovate the building and, in return for his monetary and renovation contributions, would then receive a 49% interest in the property. Plaintiff's allegation that he performed approximately 70% to 75% of the renovation work between the date of purchase and April 13, 1987, was admitted by defendant in his answer.

On April 13, 1987, Wolfson disappeared. Thereafter, plaintiff was denied further access to the property pending an investigation into Wolfson's disappearance. On July 9, 1987, Wolfson was found murdered in a wooded area in Sherwood, Illinois. Shortly thereafter, an investigation into the murder was instituted by local authorities followed by an investigation by the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms into Wolfson's possible involvement in the trafficking of drugs and stolen merchandise.

On June 10, 1987, following a conversation with Chicago police sergeant Paul Ceffalio concerning Wolfson's disappearance, plaintiff instructed the officer to direct any future questions to his attorneys. A few days later, one of plaintiff's attorneys telephoned Sergeant Ceffalio and left a message that he was calling regarding the arrangement of a meeting with plaintiff. There is a dispute as to whether Sergeant Ceffalio returned the attorney's call, but it is agreed that no conversation occurred between either the attorneys or plaintiff and Officer Ceffalio. In a conversation with Wolfson's father on June 27, 1987, plaintiff said that he was being harassed by the police in connection with their investigation into Wolfson's disappearance and that he had retained an attorney and was refusing to cooperate with the police.

As noted above, plaintiff filed this action against Wolfson's estate on August 25, 1987. On September 1, 1987, plaintiff was interviewed by Officer Hanley from Shorewood and a Chicago police officer. In the course of the interview, he stated that the officers who had previously contacted him had harassed him and told him that he would be "nailed" for his involvement in Wolfson's disappearance. At the conclusion of the interview, plaintiff gave the officers his counsel's business card and advised them to direct all future questions to his attorneys.

On October 7, 1987, the law firm of Rudnick and Wolfe filed an

appearance on behalf of defendant. By agreement of the parties, defendant was granted three extensions of time to answer or otherwise respond to plaintiff's complaint, up to January 4, 1988. Just prior to that date, plaintiff's counsel was notified that because of a possible conflict of interest, Rudnick and Wolfe was withdrawing from the case. Defendant was given a fourth extension, to February 4, 1988, by which to file an answer. On February 4, 1988, defendant's current counsel filed its appearance, an answer, a request for production of documents and a notice for the deposition of plaintiff on March 9, 1988. By agreement of the parties, the deposition was rescheduled to April 13, 1988.

On March 9, 1988, plaintiff's counsel notified defendant's counsel that he had been informed that a grand jury had been convened in Will County to investigate Wolfson's death and possible involvement in criminal activities. Plaintiff's attorney further advised defense counsel that until plaintiff was made aware of his status in the investigation, he could not appear for a deposition. According to the subsequently filed affidavit of Anthony Mongello, a personal and business acquaintance of plaintiff and Wolfson, he (Mongello) had been subpoenaed to appear before the Will County grand jury; plaintiff's name was mentioned numerous times in connection with the investigation into Wolfson's possible involvement in illegal activities; and he, Mongello, thereafter informed plaintiff of these matters.

In a letter to plaintiff's counsel dated March 11, 1988, defense counsel noted that plaintiff's deposition originally had been scheduled for March 9, 1988, and stated that "in light of the fact that we have already furnished you with one extension of time, we intend to take [plaintiff's] deposition on the agreed dates of April 13th and 14th." On March 17, 1988, defendant filed a motion to compel plaintiff to attend the April 13 deposition. Following hearings on March 21 and 30 and the filing of memoranda of law by the parties, the trial court granted defendant's motion and ordered plaintiff to appear at the deposition scheduled for April 13.

On April 6, 1988, plaintiff filed a motion for voluntary dismissal pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1009). On April 13, defendant responded with a motion for dismissal with prejudice and for sanctions pursuant to section 2—611 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The trial court granted plaintiff's motion for voluntary dismissal without prejudice and denied defendant's motion for dismissal with prejudice. However, the court did grant defendant's motion for sanctions against both plaintiff and his attorneys.

The trial court based its imposition of sanctions on its findings that plaintiff and his attorneys knew or should have known, at the time the case was filed, that it could not be proven. Specifically, the court found that plaintiff knew, prior to filing the suit, that he was a potential target in the ongoing investigations into Wolfson's possible involvement in illegal activities and his murder; that plaintiff had hired attorneys and refused to talk to the police; that he knew he could not testify until his status in those investigations was determined; and that notwithstanding his inability to testify, he proceeded to file a suit which could not be proved without his testimony. The trial court stated this was a frivolous lawsuit, not because the claim was not legitimate or because plaintiff had no evidence to support it, but, rather, because he could not "maintain the suit despite the evidence."

Pursuant to the trial court's order, on July 14, 1988, defendant filed a schedule of attorney fees and expenses totalling $25,606.07. On July 15, plaintiff filed a motion to reconsider the order of June 16 granting defendant's motion for section 2—611 sanctions. On August 26, plaintiff filed an amended motion for reconsideration and his response to defendant's fee schedule.

On September 19, 1988, plaintiff filed a motion for vacatur or, alternatively, for leave to withdraw his voluntary dismissal and for reinstatement of the case. In support thereof, plaintiff asserted that in August 1988, he was contacted by Special Agent Fritzsche of the Bureau of Alcohol, Tobacco and Firearms; that during a meeting with Fritzsche and Officer Hanley of the Shorewood police department, he was made aware of his status in the investigation into Wolfson's activities; and that he was, therefore, prepared to be deposed and to proceed with the case. On that same date, defendant filed a supplemental schedule of costs and fees totalling $29,231.39, which included amounts for the preparation of a response to plaintiff's motion to reconsider as well as preparation of the initial and supplemental fee schedules. A hearing on the motions was held on November 14, and on November 18, the trial court denied plaintiff's motions to vacate the voluntary dismissal and to reconsider the order granting defendant's motion for sanctions pursuant to section 2—611. After finding that the fees requested by defendant were excessive, the trial court awarded defendant a total of $12,828.89. Plaintiff's timely appeal followed.

■ Plaintiff contends that this case does not come within the purview of section 2—611 and that sanctions were improperly imposed. Section 2—611 as amended, provides in pertinent part:

"Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record \*\*\*. \*\*\* The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. \*\*\* If a pleading, motion, or other paper is signed in violation of this Section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party \*\*\* the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.)

The purpose of section 2—611 is to prevent a litigant from abusing the judicial process by penalizing parties who bring vexatious or harassing actions lacking legal or factual foundation. (*Beno v. McNew* (1989), 186 Ill. App. 3d 359, 542 N.E.2d 533.) Because section 2—611 is penal in nature, it must be strictly construed and may be invoked only when each of its requirements are proved by the party seeking the sanctions. *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995.

■ Defendant asserts that sanctions were properly imposed in this case because plaintiff's complaint was not well grounded in fact or law. Citing *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57, defendant argues that it is the law in Illinois that a plaintiff cannot "maintain" a civil action while simultaneously refusing to testify on fifth amendment grounds, and that in such circumstances, the suit must be dismissed with prejudice. It is defendant's position, which was adopted by the trial court, that at the time the complaint was filed both plaintiff and his counsel knew that an investigation was ongoing into Wolfson's disappearance and murder and that he was a "target" of it. Defendant emphasizes that when police officers attempted to interview plaintiff, he exercised his fifth amendment privilege against self-incrimination and refused to answer questions or otherwise cooperate with authorities; and that plaintiff and his counsel knew that "until he determined his 'status'

in the investigation in which he was asserting his fifth amendment privilege, plaintiff would continue to invoke the fifth amendment and could not testify in support of his claim." Defendant therefore asserts that the trial court correctly found that the action was filed in violation of section 2—611 because it was not well grounded either in fact or in existing law, and hence, properly imposed sanctions against both plaintiff and his attorneys. We disagree.

A fundamental allegation of plaintiff's verified complaint was that in accordance with the oral contract between him and Wolfson, he performed substantial renovation work on the building at issue for which he had received no compensation. Defendant did not move to strike or dismiss the complaint but, rather, filed an answer in which he admitted this important allegation. Further, plaintiff asserted in support of his motion for reconsideration of the imposition of sanctions that the case did not rest solely and entirely upon his own testimony but could possibly have been proven by certain other specified documentary and testimonial evidence. Moreover, the trial court itself stated that this was "not a case in which it is alleged that the facts are not true" nor one in which plaintiff did not have evidence to support his claim. Thus, it cannot be said that sanctions were justified on the basis that plaintiff's complaint was not well grounded in fact.

Likewise, we do not believe that sanctions were warranted by the holding in *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57. In *Galante*, the plaintiffs brought an action to recover insurance proceeds after property in which they claimed an interest was destroyed by fire. The insurers denied liability and raised the affirmative defense of arson. Plaintiffs appeared at their depositions but refused to answer any questions, expressly invoking the fifth amendment privilege against self-incrimination. The insurers presented motions to dismiss the plaintiffs' complaint or for other sanctions pursuant to Supreme Court Rule 219 (107 Ill. 2d R. 219). Following a hearing at which counsel for the plaintiffs advised the court that the plaintiffs would persist in refusing to answer deposition questions, the trial court struck all of the plaintiffs' pleadings and dismissed their complaint with prejudice. On appeal, the court upheld the dismissal, stating that it would be unjust to allow the plaintiffs to proceed with the prosecution of their case and at the same time refuse to answer questions which may have substantially aided the defense or even established a complete defense. The court held that plaintiffs should not "be permitted to use the Fifth Amendment privilege as both a shield of protection and a sword of attack." (*Galante*, 66 Ill. App. 3d at 482.) The instant case is distinguishable

from *Galante* in several respects.

First, unlike the plaintiffs in *Galante*, and contrary to the trial court's findings and defendant's argument, plaintiff did not exercise his fifth amendment privilege prior to voluntarily dismissing the action. Defendant repeatedly points to plaintiff's unwillingness between June and September 1987 to be interviewed by the police and his referral of them to his attorneys as occasions on which plaintiff exercised his fifth amendment privilege. The trial court agreed, additionally remarking that plaintiff knew that until he was made aware of his status in the investigations he would "continue" to invoke the privilege.

However, the affidavits of the police officers themselves establish that plaintiff did meet and speak with the investigative officers. Officer Ceffalio stated that he met with plaintiff on June 10, 1987, and questioned him about Wolfson's disappearance, and that two days later plaintiff's counsel left a telephone message for Sergeant Ceffalio regarding plaintiff. In September 1987, plaintiff also submitted to an interview by Officer Hanley of Shorewood. Officer Hanley stated that he questioned plaintiff and "among other things" plaintiff stated that he had been contacted and harassed by the Chicago police, who told him he would be "nailed" for Wolfson's disappearance, and that "at the conclusion of the interview," plaintiff gave him his attorneys' business card and told Hanley to direct all future inquiries to them. Plaintiff did not refuse to respond to police questions, he simply advised the investigative officers that he chose not to voluntarily submit to additional personal interviews because he felt they were harassing and threatening him. Merely advising police officers to relay future inquires to him through his attorneys does not constitute an exercise of the fifth amendment right to remain silent.

Neither do we view the March 9 letter from plaintiff's counsel to defense counsel regarding the "need to continue" the deposition to have been an exercise by plaintiff of his fifth amendment rights as occurred in *Galante*. As noted above, in *Galante* the plaintiffs attended their depositions but expressly refused to answer each deposition question posed on them on the ground that the answers might tend to incriminate them. Counsel for the plaintiffs in *Galante* also informed the court that unless his clients were given immunity from prosecution, they would persist indefinitely in their reliance on the fifth amendment right to remain silent.

In the case at bar, plaintiff did not refuse to testify at a deposition or condition his responding to deposition questions upon immunity while at the same time seek to proceed with the prosecution of

his claim. Indeed, at the March 21 hearing on defendant's motion to compel his attendance at the April 13 deposition, plaintiff's attorneys requested a period of 14 days within which to speak with Will County investigators to learn plaintiff's status, *e.g.*, witness, target or neither, in the investigation. Plaintiff's attorneys proposed that they would produce plaintiff for a discussion with the investigators and then confer with the investigators regarding plaintiff's status. Counsel stated that if it were verified that plaintiff was not a subject of the investigation, plaintiff would submit to a deposition, and that if he *was* a target they would either request another postponement of the deposition or refuse to produce him for deposition and "withdraw the lawsuit." The trial court denied plaintiff's request for a postponement and continued the hearing on defendant's motion to compel to March 30.

On that date, counsel for plaintiff advised the trial court that they had been contacted by an agent of the Bureau of Alcohol, Tobacco and Firearms who wished to speak to plaintiff. Counsel represented that a continuance of 45 days would provide sufficient time to determine plaintiff's status in the criminal investigation; counsel also noted parenthetically that three extensions, totalling several months, had been granted defendant to file an answer. Counsel acknowledged that dependent upon what was learned or not learned regarding plaintiff's status, plaintiff would have to choose either to submit to a deposition and risk possible self-incrimination or voluntarily dismiss the lawsuit. The trial court sustained the defense objection to the 45-day continuance and granted defendant's motion to compel plaintiff's attendance at the deposition scheduled for April 13.

Rather than either risking possible self-incrimination by testifying at a deposition, disobeying the trial court's order to attend his deposition, or attending the deposition and *then* invoking the fifth amendment, plaintiff promptly, *i.e.*, on April 6, opted to voluntarily dismiss his action. We find this decision to be in contrast to the situation in *Galante*, where the plaintiffs expressly invoked the fifth amendment while at the same time expected to continue prosecuting their claim, which the *Galante* court described as using "the Fifth Amendment privilege as both a shield of protection and a sword of attack." *Galante*, 66 Ill. App. 3d at 482.

The instant case is more analogous to *Model Industries, Inc. v. Walsh Press & Die Co.* (1982), 111 Ill. App. 3d 572, 444 N.E.2d 639. In that case, the plaintiff filed a product liability action in April 1978. In June 1980, one day before trial and after extensive pretrial discovery, the plaintiff served defendant with notice that he would

file a motion for a voluntary dismissal the following day because he had been unsuccessful in locating witnesses to support his claim. Defendant presented a motion for sanctions under the former version of section 2—611 arguing that the suit was not brought in good faith; that the claim was made without reasonable cause; and that plaintiff had placed an undue burden on the defendant to expend monies for attorney fees. Following a hearing, the trial court granted plaintiff's motion for voluntary dismissal but, as in the case at bar, also granted defendant's motion for attorney fees pursuant to section 2—611. The appellate court reversed on the basis of strict construction of section 2—611. Specifically, the court found that in determining the propriety of sanctions under section 2—611, the issue is not whether the plaintiff had a likelihood of prevailing in the suit but whether the allegations were made without reasonable cause and were found to be untrue.

The amended version of section 2—611 does not require a finding of untrue allegations. It does, however, require a showing by the party seeking to invoke it that the challenged pleading lacked factual or legal foundation or that it was filed for an improper purpose. For the reasons discussed above, we find that defendant failed to sustain his burden that plaintiff's complaint was not well grounded in fact or law or that the suit was vexatious. It necessarily follows that we also find that the trial court's imposition of sanctions in this case was an impermissible expansion of the provisions of section 2—611. Consequently for the reasons stated, we reverse the order granting defendant's motion for sanctions against plaintiff and his attorneys.

Reversed.

JOHNSON and JIGANTI, JJ., concur.