No. 3--06--0234

Filed March 16, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois |
| Respondent-Appellant, | ) ) | |
| v. | ) ) | No. 06--DT--211 |
| JASON HALL, | ) ) | Honorable Edward A. Burmila |
| Petitioner-Appellee. | ) | Judge, Presiding |

JUSTICE HOLDRIDGE delivered the opinion of the court:

Jason Hall was arrested for DUI and given immediate notice of statutory summary suspension of his driving privileges. He petitioned to rescind the summary suspension, and the matter proceeded to a hearing where the circuit court granted his petition. During the recission proceedings, the court allowed Hall to invoke his fifth amendment right against self incrimination when the State called him to testify. The State filed this appeal, challenging both the decision to rescind and the fifth amendment determination. We reverse on the fifth amendment issue and remand for further proceedings.

BACKGROUND

At the recission hearing, Officer Kirsch of the Will County Sheriff's Department testified as follows.

On February 5, 2006, at approximately 1:40 a.m., Kirsch was traveling southbound on Interstate 55 one mile from the Route 52 junction. He was in the right lane directly behind a black Pontiac Grand Prix, and he observed the Pontiac weave within its lane. Specifically, he said the vehicle would go from the fog line on the right to the white dotted line on the left, but without ever crossing those lines. Kirsch said that although he observed no specific traffic violation, he decided to stop the Pontiac for this weaving. He waited to do so, however, because the Pontiac's turn signal came on at the Route 52 exit, and he figured it would be safer to make the stop on Route 52. The Pontiac exited and headed westbound on Route 52, eventually stopping for a red light at the Route 59 intersection (approximately 3/4 of a mile west of Interstate 55). After the Pontiac cleared that intersection, Kirsch activated his overhead lights and made the stop. The stop occurred 1/10 to 2/10 of a mile after the Pontiac turned onto Brook Shore Drive. Kirsch said his reason for not conducting the stop earlier on Route 52 was that he just wanted to follow a bit more. As he followed the Pontiac, he noticed that it stopped past the white stop line at Route 59; its rear tires were on the line, although the front of the vehicle was not into the intersecting lane of traffic.

Kirsch ultimately wrote citations for DUI and stopping past the stop line, but not for weaving. He had a video camera in his squad car but said he did not capture any footage because the tape was defective.

After Kirsch approached the Pontiac, Hall (the driver) properly provided his driver's license and insurance card. Kirsch conversed with Hall throughout the stop and did not observe anything unusual about his speech. For instance, it was not slurred or "mush mouthed." Kirsch noted a strong odor of alcohol and observed that Hall's eyes were red and watery. He asked Hall

2

to exit the vehicle for field sobriety testing. Hall exited normally but walked to the rear of the vehicle with a wide stance. He did not stagger or sway, and Kirsch did not know if he normally walked with a wide stance.

Kirsch asked Hall to recite the alphabet from the letters D to Q without singing. Hall began reciting from D but sang between I and Q. Kirsch then performed a horizontal gaze nystagmus test for which Hall properly followed the instructions. Hall's eyes were jerky and exhibited an onset of nystagmus prior to 45 degrees, as well as distinct and sustained nystagmus at maximum deviation. Next, Kirsch performed the one-leg-stand test. He instructed Hall to stand on one foot while holding the other approximately six inches off the ground and counting "one thousand one, one thousand two," and so on. Hall initially raised his left foot, counted properly to five, and set the foot down. He then switched to his right foot, counted properly to three, and set it down--losing his balance and falling against his car while catching himself. On a third attempt, he counted to 30 but did so in just 18 seconds. Kirsch re-explained the proper counting procedure ("one thousand one," and so on). Then on a fourth attempt, Hall again counted to 30 but did so in 22 seconds.

Next, Kirsch administered a walk-and-turn test. He instructed Hall to take nine heel-to-toe steps down the yellow center line of the road, turn around by pivoting with his front foot on the line, and walk back in the same manner. Hall stepped off the line several times on his way down, did not turn around as instructed, and stepped off the line an unknown number of times on his way back. However, he kept his arms to his sides as instructed, and he did not sway or stumble during the test.

3

Kirsch then offered Hall a portable breath test, which was refused. The DUI arrest followed. In Kirsch's opinion, based on his training since 1989 and upwards of 150 DUI arrests in the past two years, Hall was under the influence of alcohol and unfit to operate a motor vehicle. In support of this opinion, Kirsch offered the following observations of Hall: weaving on Interstate 55, stopping past the white line at Route 59, strong odor of alcohol, red and watery eyes, walking to the rear of his vehicle with a wide stance, and failure during field sobriety tests. Hall denied being on Interstate 55 and said he was coming from the local area instead. Kirsch asked where in the local area Hall was coming from, and Hall responded that he was playing cards somewhere. At several times during the stop, he denied drinking alcohol that night.

The record shows that Hall made approximately 50 DUI arrests in 2004 and more than 100 in 2005. He was one of the top deputies in the Will County Sheriff's Department in terms of DUI arrests. At the time in question, the sheriff had asked deputies to average two DUI stops per night.

After presenting this testimony from Kirsch, the State moved for a directed finding. The court heard arguments from both parties and then made the following observations: Kirsch said he did not observe any specific traffic violation (only weaving) on Interstate 55; rather than conducting a stop when the Pontiac reached Route 52, he continued following it looking for some violations; even after the Route 59 intersection, Kirsch waited another 2/10 of a mile to effectuate a stop; Hall denied numerous times that he had been drinking; the mere act of singing the alphabet, as opposed to just saying it, is a "neutral" factor as to intoxication; Hall complied with all the instructions on the horizontal gaze nystagmus test, including standing still and following the stimulus with his eyes only, not moving his head; Kirsch must have felt that Hall

4

did not understand the instructions for the one-leg-stand test, because he allowed the test to be repeated four times; Hall was able to stand with one foot off the ground for over 40 seconds even by Kirsch's testimony; and although Hall stepped off the line during the walk-and-turn test, he kept his arms at his sides and did not sway or stumble (which likely would have happened if he lost his balance).

Based on these considerations, the court denied the State's motion for a directed finding. The contradictory evidence led the court to believe that Kirsch lacked a reasonable suspicion that Hall was under the influence of alcohol. Accordingly, the court found that Hall had met his burden, and the burden thus shifted to the State.

The State then called Hall to testify, but he asserted his fifth amendment right against self incrimination. The prosecutor said the State would have difficulty meeting its burden without testimony from Hall. The court ultimately ruled that Hall did not have to testify, and that no negative inferences could be drawn from his refusal to take the stand. The State then proceeded by arguing that Kirsch had reasonable grounds to believe that Hall was driving under the influence of alcohol. Hall stood on his prior arguments, and the court granted his petition to rescind the statutory summary suspension of his driving privileges. This appeal followed by the State.

DISCUSSION

1. Self Incrimination Issue

In Village of Algonquin v. Tilden, 335 Ill. App. 3d 332 (2002), the Appellate Court, Second District, held that the fifth amendment right against self incrimination is not violated when a petitioner is required to testify as an adverse witness in a hearing on his petition to

5

rescind statutory summary suspension of his driving privileges. We agree with this decision. The fifth amendment's application is limited to criminal proceedings, whereas a recission hearing is unquestionably civil in nature. U.S. Const., amend. V ("nor be compelled in any criminal case to be a witness against himself"); People v. Orth, 124 Ill. 2d 326 (1988); 625 ILCS 5/2--118.1(b) (West 2004) (circuit court handles recision cases like other civil cases). Thus, the instant question does not concern whether Hall could be required to testify per se, but whether such testimony might disadvantage him in his defense against the State's DUI charge (which is criminal in nature).

The State responds by noting that such disadvantage is now impossible because the DUI proceedings against Hall are over. But the DUI proceedings were not over when the circuit court issued its fifth amendment ruling, and the instant appeal involves the propriety of that ruling. Accordingly, this observation by the State is not dispositive on its own.

In People v. Lindsey, 199 Ill. 2d 460 (2002), the Illinois Supreme Court held that a probationer could be compelled to testify at a probation revocation hearing because the proceeding was civil, rather than criminal, in nature. The court specifically observed that the defendant's fifth amendment right against self incrimination was not violated because his testimony impacted only his probationary status and did not realistically expose him to further proceedings. The instant case is distinguishable on this point because Hall did face separate criminal proceedings in the form of a DUI prosecution. However, in Minnesota v. Murphy, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984), the United States Supreme Court blunted this distinction by observing that a probationer can be compelled to give incriminating answers as long as the answers are not used in additional criminal proceedings.

6

Accordingly, the Second District in Tilden held that a motorist can be required to testify as an adverse witness at a hearing on his petition to rescind statutory summary suspension of his driving privileges, but any incriminating statements made during such testimony cannot be used against him in a criminal prosecution such as for DUI. This procedure eliminates the self incrimination problem. We agree with it and thus conclude that Hall should not enjoy immunity from answering the State's questions during his recision proceedings. We also elaborate on the concern addressed in Tilden by noting that in addition to incriminating statements themselves, any information gleaned from such statements would be barred in a criminal proceeding. In other words, incriminating statements made during a summary suspension hearing cannot be used as a discovery source for the State in a separate, criminal proceeding.

Hall cites People ex rel. Sherman v. Cryns, 327 Ill. App. 3d 753 (2002), another Second District case. In that case, the Department of Professional Regulation sought a preliminary injunction to enjoin the defendant from practicing nursing or midwifery without a license. There was also a concurrent criminal case against her. The Second District held that the circuit court could not draw negative inferences from the defendant's refusal to testify in the injunction proceeding. The underlying concern was that her compelled answers to questions in that proceeding might be used against her in the concurrent criminal proceeding. Cryns is thus unavailing to Hall because Tilden eliminated this concern under the instant facts.

Hall complains that the Tilden policy will open the door for prosecutors to seek dismissal of recission petitions in cases where petitioners refuse to testify. This is the very type of thing that occurs in civil cases when the party bringing an action refuses to provide information properly requested by the defending party. See, e.g., Galante v. Steel City National Bank of

7

Chicago, 66 Ill. App. 3d 476 (1978) (affirming trial court's dismissal of plaintiff's case because plaintiff refused to answer discovery questions); In re Marriage of Hartian, 172 Ill. App. 3d 440 (1988). With the potential impact on Hall's criminal case eliminated through the policy articulated in Tilden, he is left with the fact that his recission case is a civil proceeding where the fifth amendment simply does not apply. He cannot invoke an inapplicable right.

This conclusion obviates the need to address the trial court's recision order because additional proceedings are now warranted below before a final determination can be made. We thus remand for those proceedings.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the Will County circuit court and remand for further proceedings consistent with this order.

Reversed and remanded for further proceedings.

LYTTON, P.J. concurs.

JUSTICE McDADE, dissenting:

The majority has held that Hall should not enjoy immunity from answering the State's questions during his rescission proceedings, adopting the policy articulated in *Village of Algonquin v. Tilden*, 335 Ill. App. 3d 332, 780 N.E.2d 832 (2002), and that its holding obviates the need to address the trial court's rescission order because additional proceedings are now warranted. For the following reasons, I disagree with the majority's findings and respectfully dissent.

In *Tilden*, the court held that "defendant's filing of her petition waived any right against self-incrimination that she might have had in the suspension proceedings." *Tilden*, 335 Ill. App.

8

3d at 338, 780 N.E.2d at 836. The *Tilden* court found support for its holding in *People v. Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399 (2002), "in which the supreme court held that a probationer may be compelled to testify at a probation revocation hearing." *Tilden*, 335 Ill. App. 3d at 338, 780 N.E.2d at 837. *Tilden* recognized that *Lindsey* was distinguishable in that, in *Tilden*, the "defendant faced a contemporaneous criminal action at the time she petitioned to rescind the license suspension" (*Tilden*, 335 Ill. App. 3d at 339, 780 N.E.2d at 837) whereas in *Lindsey* the defendant's "testimony 'only impacted his probationary status and did not realistically expose him to any further proceedings, such as indirect criminal contempt sanctions.'" *Tilden*, 335 Ill. App. 3d at 339, 780 N.E.2d at 837, quoting *Lindsey*, 199 Ill. 2d at 470, 771 N.E.2d at 407.

Nonetheless, *Tilden* found it could accord *Lindsey* based on Justice Freeman's citation, in a concurring opinion, to *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984), in which the Supreme Court held that "'a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination.'" *Lindsey*, 199 Ill. 2d at 481, 771 N.E.2d at 414 (Freeman, J., specially concurring), quoting *Murphy*, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7. *Tilden* "reconcile[d] *Galante*, *James*, and *Lindsey* [to] hold that a motorist's fifth amendment right against self-incrimination is not violated when he is compelled to testify as an adverse witness in a hearing on his petition to rescind a statutory summary suspension of driving privileges, but any incriminating testimony from the civil proceeding is inadmissible in other

9

criminal proceedings, such as a contemporaneous DUI action." *Tilden*, 335 Ill. App. 3d at 339, 780 N.E.2d at 837.

The majority finds that the policy articulated in *Tilden* eliminates the self-incrimination problem, noting that it would *appear* that any information gleaned from Hall's coerced statements in a recision hearing could not be used as a discovery source for the State in a separate, criminal proceeding. That, in my opinion, is insufficient. Based on the foregoing case law, I would agree with the majority to the extent that the State can call the petitioner in a proceeding to rescind a statutory summary suspension to testify and the trial court can compel such testimony, but only if the danger that the petitioner's testimony might be used in a subsequent criminal proceedings is actually removed.

Courts have relied on the danger of the use of testimony, not its actual use, to find that the fifth amendment protections apply, and it the danger that must be removed before the privilege is overcome. See, *e.g.*, *Lindsey*, 199 Ill. 2d at 471, 771 N.E.2d at 408 ("because of the stringent procedural burdens involved in charging and prosecuting a defendant for indirect criminal contempt," defendant did not face a realistic expectation that his testimony at a hearing on a petition to revoke probation would subject him to indirect criminal contempt prosecution where the petition did not inform defendant that he could or would be subject to indirect criminal contempt charges for failing to follow the court order); *Pinkney v. District of Columbia,* 439 F. Supp. 519, 533 (D.C. Circuit 1977) ("[t]he protections afforded by the self-incrimination clause go beyond forbidding the government to *use* testimony obtained by compulsion to convict the speaker. The privilege equally restrains the government from coercing the witness into making

10

the choice between exercising the privilege and *risking* the burden of some governmental sanction" (emphases added)).

     *Tilden* held that the petitioner in a rescission proceeding "waived any right against self-incrimination." *Tilden*, 335 Ill. App. 3d at 338, 780 N.E.2d at 836.  In *Lindsey*, our supreme court specifically found that the defendant's testimony at his probation revocation hearing was not a violation of the defendant's privilege against self-incrimination because he did not face a realistic expectation that his testimony would subject him to indirect criminal contempt.  *Lindsey*, 199 Ill. 2d at 470, 771 N.E.2d at 407.  I believe an important question remains for proceeding to rescind statutory summary suspensions as to what standard the court should employ to determine that the danger is actually removed and who has the burden of proving it to the court.  The following is instructive:

> "[T]he government may not use a protective order to compel a
> witness to testify during a *** civil proceeding.  Absent a grant of
> immunity, the deponents were entitled, with or without a protective
> order, to assert their fifth amendment privilege in answer to
> potentially incriminating questions in a civil proceeding.  In
> *Pillsbury Co. v. Conboy*, 459 U.S. 248, 74 L. Ed. 2d 430, 103 S.
> Ct. 608 (1983), the Supreme Court established this principle by
> reversing a contempt order entered against a civil litigant who had
> not received a grant of immunity and who asserted his fifth
> amendment privilege against self-incrimination in deposition
> testimony.  The Court ruled that a party to a civil action has a right

11

to assert the privilege *until immunity is granted by officials of the Department of Justice.* Id. at 261." (Emphasis added.) *In re Grand Jury Subpoena (Under Seal)*, 836 F.2d 1468, 1471-72 (4th Cir. 1988).

Moreover, section 106-1 of the Code of Criminal Procedure provides that "[i]n any *** trial in any court, the court *on motion of the State* may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce." (Emphasis added.) 725 ILCS 5/106-1 (West 2004). Thus, for material witnesses our legislature has required affirmative action by the State to take advantage of the rule that it may compel testimony in a civil action where that testimony might be used in a subsequent criminal proceeding. The State must file a motion with the court requesting an order that the witness be released from all liability to be prosecuted on account of his testimony.

A similar rule should apply here. I would require the State to file a motion with the court seeking an order that the petitioner's testimony in a hearing on a petition to rescind a statutory summary suspension is excluded from the subsequent criminal trial. Absent such a motion and order, the trial court has no assurance that the petitioner's statements will not be used against him in subsequent criminal proceedings. In the case at bar, the court expressed doubt that any testimony by defendant would be inadmissible at his trial. The State offers no evidence that the court's concerns were unfounded. The State offers nothing to prove to this court that defendant's testimony would not have been used at a subsequent criminal trial.

The majority also relies on *Galante v. Steel City National Bank of Chicago*, 66 Ill. App. 3d 476, 384 N.E.2d 57 (1978), to dismiss Hall's concern, and mine, that the *Tilden* policy will

12

cause prosecutors to seek dismissal of rescission petitions in cases where the petitioner refuses to testify. The majority then appears to conclude that fifth amendment protections should be of no concern in rescission proceedings. Again, I disagree.

*Galante* appears to support the majority's conclusion that the fifth amendment privilege does not apply to one who institutes a civil proceeding to rescind a statutory summary suspension. *Galante*, 66 Ill. App. 3d at 480-81, 384 N.E.2d at 61. However, *Galante* is distinguishable from the case at bar in that there, criminal proceedings were not contemporaneous to the civil action and the possibility of a criminal proceedings was merely speculative. Moreover, the *Galante* court relied on the fact that the plaintiffs "forced defendants into court." *Galante*, 66 Ill. App. 3d at 482, 384 N.E.2d at 62.

The same cannot be said in a rescission proceeding. In rescission proceedings, the petitioner does not force the State into court for his own gain. He merely seeks to recover the driving privileges that he claims the State wrongly took away and is exercising his right to do so under the statutory scheme that permitted the State to take that privilege from him. Therefore, the better rule would be to require that the trial court receive assurance that the danger the petitioner's testimony might be used against him has been removed before the petitioner testifies in a rescission proceeding, and that the petitioner is entitled to such assurance despite the civil nature of the proceedings. Until the danger is actually removed, fifth amendment protections are still in place; thus it is insufficient to require the testimony with a simple *caveat* that it not be used in later criminal proceedings.

Before the petitioner is presented with guarantees that his testimony will not and can not be used against him, the Hobson's choice between forgoing his driving privileges or potentially

13

convicting himself of a crime remains. The trial court properly held that defendant could assert his fifth amendment privilege and refuse to testify at the hearing on his petition to rescind. Moreover, the court reached the reasonable conclusion--based on all of the evidence--that defendant's performance on the field sobriety tests did not lead to a reasonable suspicion that he was intoxicated. Accordingly, I would affirm the court's order granting the petition to rescind Hall's statutory summary suspension.

For all of the foregoing reasons, I respectfully I dissent.